This timely appeal arises from a jury verdict finding Appellant guilty of complicity to commit aggravated burglary, complicity to commit aggravated robbery, and complicity to commit kidnapping with accompanying firearm specifications. Appellant contends that the evidence was insufficient to convict him and the verdict was against the manifest weight of the evidence. He claims that the only evidence implicating him came from an individual who lacked direct knowledge and who provided unreliable and inconsistent hearsay testimony. For the following reasons, this Court affirms the jury verdict.
On June 23, 1995, the grand jury indicted Appellant for complicity to commit aggravated murder, complicity to commit aggravated burglary, complicity to commit aggravated robbery and complicity to commit kidnapping, all with accompanying firearm specifications. The indictment alleged that Appellant had aided or abetted one Delbert Michael Fowler, also known as "Dink," in committing these crimes on or about April 23, 1995 at the home of Arleen Ramirez. The murder victim was Hector Ramirez, who suffered many gunshot wounds, including the fatal wound to the head which produced a sudden massive brain trauma. A sheet was found over Hector's body, which was slumped over the couch in a seated position. Bullets had been fired through the sheet. Some of these were later identified as coming from a 9mm weapon.
Shortly after the crime, the police questioned Brad Merrill, the state's main witness at trial. Merrill initially denied involvement with the crime. When questioned a second time, Merrill appeared with his attorney and described the events surrounding the crimes. On the basis of Merrill's statements, the police arrested Appellant and the grand jury indicted him. The police also conducted an interview with Appellant which was recorded on videotape.
At trial, the State called as its main witness, Brad Merrill. Merrill testified as to his personal observations of events transpiring on April 23, 1995. He also testified as to what another alleged conspirator, Gilbert Delgado, told him happened in the Ramirez home on that night because Merrill remained in the car during the crimes. Merrill related that on April 23, 1995, he picked up Delgado and they drove to the "Campbell projects" and eventually picked up Appellant and Delbert Fowler. (Tr. pp. 539-540). Merrill testified that he noticed that Appellant had a 9mm gun in his hands and that he saw what appeared to be the butt of a gun sticking out of the bottom of Fowler's jacket. (Tr. pp. 542-544). Merrill indicated that they drove to the home of Arleen Ramirez to purchase marijuana. (Tr. p. 546). When Merrill approached Ms. Ramirez's home, Delgado told him to drive past the house and turn left at the top of the block. (Tr. p. 547).
Merrill testified that Delgado stepped out of the car and stated "we're about to lick these cats," meaning to Merrill that they were about to rob Arleen Ramirez. (Tr. p. 550). Appellant, Fowler and Delgado then exited the car and headed toward the Ramirez home. Merrill remembered seeing Appellant with the 9mm in his hand as he exited the car and saw Fowler pull an assault rifle out from under his jacket. (Tr. pp. 553-555). Merrill remained in the car watching the trio walk down the street. (Tr. p. 555). Merrill waited in the car twenty minutes and upon hearing gunfire coming from the house, he began to drive away. (Tr. p. 555-556). As he was driving, he saw the three men running toward his car at the same time. (Tr. p. 556).
Upon reentering the car, Merrill saw that Fowler had the assault rifle and Delgado now had the 9mm. (Tr. p. 558). Merrill remembered Delgado asking Appellant and Fowler if they thought "he" was dead to which Fowler replied "yes." (Tr. p. 558). Upon hearing this, Merrill testified that he began shaking and could no longer drive so Delgado drove and Merrill sat in the backseat with Appellant. (Tr. p. 566-567). Merrill testified that Delgado then told him what occurred when the trio reached the Ramirez home. Merrill stated that according to Delgado he had kicked in the door of the Ramirez home and Appellant and Fowler entered the house first with their guns drawn. (Tr. p. 567).
Hector Ramirez, the victim, was at Arleen's residence housesitting. Delgado told Merrill that Appellant held Hector at gunpoint on the couch while Fowler put his gun up to him and told him to sit up on the couch. (Tr. p. 567). Delgado then threw a blanket over Hector and started hitting him and asking him where all the "stuff" was, meaning drugs. (Tr. p. 567). When Hector insisted that no drugs were in the house, Delgado told Merrill that Appellant and Fowler kept Hector on the couch with their guns while he searched the house. (Tr. p. 568). Merrill testified that Delgado told him that he shot Hector with the 9mm in the leg and foot after ransacking the home, toppling over furniture and pulling the ceiling tiles down onto the floor, and finding no drugs. (Tr. p. 568). Merrill testified that after he heard gunshots, he saw the three men running toward his moving car. (Tr. p. 568). Merrill testified that Gilbert then wanted to rob another house but Merrill refused. (Tr. p. 570). Merrill dropped Fowler off at home and took Appellant and Delgado to a friend's house before driving himself home. Merrill testified that shortly after that, Appellant threatened him not to go to the police. (Tr. p. 576).
On cross examination, defense counsel sought to discredit Merrill and raised inconsistencies between Merrill's direct testimony at trial and statements that Merrill earlier made in his police interview and at the preliminary hearing. Merrill testified that he lied to the police upon initial questioning because he felt threatened by Appellant and Delgado. (Tr. p. 578). Merrill denied that he told a detective that both the 9mm and the assault rifle were at Fowler's house and also denied that he had been suspended from work on the day of the crime for an incident different than the one he told the jury about on direct examination. (Tr. pp. 594-595). Merrill also denied testifying on direct that he saw Appellant with the 9mm in his hand upon first entering his car and indicated that he saw the gun when Appellant was in Merrill's backseat. (Tr. p. 598). Merrill stated that he did not tell police that he got outside of the car while they were in the "projects" and did not tell defense counsel at the preliminary hearing that he needed directions to get to the Ramirez home when on direct he testified that he had been to the Ramirez house a number of times in the past. (Tr. pp. 599, 602).
Defense counsel also emphasized that Merrill had no personal knowledge of the events that transpired inside of the Ramirez home because he was never inside of the house that day and that he was only recalling what Delgado had told him in the car. (Tr. p. 606). Defense counsel also pointed out that an eyewitness reported seeing only two men running from the Ramirez house after the shots were fired although Merrill testified that all three men were running together. (Tr. p. 608). Merrill also testified on cross that they did not drink or smoke marijuana during the drive or after the crimes, but admitted that he did not know if Appellant had consumed alcohol or drugs before entering his car. (Tr. p. 605-606).
While Appellant did not testify, the jury was allowed to observe Appellant's videotaped statement to police, which painted a different version of the events that transpired on that night. Appellant told police that he was in Merrill's car and that he was under the impression that they were going to buy drugs when they went to the Ramirez home. Appellant stated that he did not have a 9mm on his person when he entered the Ramirez home but admitted that he did enter the house with Delgado and Fowler. Appellant also related that he was so intoxicated from drugs and alcohol that he fell asleep "standing up" for a couple of seconds in a room separate from the one in which Hector was held at gunpoint while the other two men ransacked the home and shot Hector. Appellant stated that he was startled back into consciousness by Delgado screaming at Hector and remembered hearing someone punch Hector. Appellant said that he heard gunfire and after hearing the shots he ran out of the house before the other two men exited.
On January 12, 1996, the jury found Appellant not guilty of complicity to commit aggravated murder and its accompanying gun specification, but found Appellant guilty of complicity to commit aggravated burglary, complicity to commit aggravated robbery, and complicity to commit kidnapping, all with accompanying firearm specifications. The Court sentenced Appellant to ten to twenty-five years on each offense and three years on the gun specification. This appeal followed.
In his first assignment of error, Appellant contends that:
 "THE VERDICT OF THE JURY FINDING DEFENDANT GUILTY OF COMPLICITY TO COMMIT AGGRAVATED BURGLARY 
ROBBERY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that the verdict was against the manifest weight of the evidence because the State's only proof that he was involved in the crimes was the testimony of Merrill. He claims this testimony was fraught with inconsistencies and unreliable hearsay because it was given upon a promise of immunity from prosecution. Appellant also contends that Merrill's testimony was insufficient to convict him of complicity because the State failed to show that Appellant aided and abetted in the commission of the crimes. Appellant lastly contends that the State failed to prove beyond a reasonable doubt the necessary elements of all of the crimes. Appellant asserts that he renounced participation in the crimes by abandoning involvement before the crimes were complete.
It should be noted that Appellant does not argue that Merrill's testimony as to statements made to him by Delgado was inadmissible. The statements clearly were admissible under Evid.R. 801(D)(2)(e), as they were co-conspirator's statements made during the course of and in furtherance of a conspiracy. The State established the elements set forth in State v. Milo
(1982), 6 Ohio App.3d 19, 22 in order to admit the statements and through Merrill's direct testimony and observations made a prima facie showing sufficient to raise that inference of a conspiracy by independent proof separate from the statement itself. State v. Carter (1995), 72 Ohio St.3d 545, 550; Statev. Martin (1983), 9 Ohio App.3d 150, syllabus. This Court has held that a conspiracy may be proven by direct testimony of one of the co-conspirators. State v. Neville (Mar. 31, 1989), Columbiana App. No. 83-C-54, unreported, citing Richards v.State (Court of Appeals for Holmes County 1932), 43 Ohio App. 212,220.
Appellant's argument is that Merrill's testimony was unreliable, inconsistent and defective because it was not based upon direct knowledge. This argument is without merit. The jury attributed greater weight and gave credence to Merrill's testimony even though the jurors knew that Merrill was not in the Ramirez house and was relating for the most part only information which another accomplice had told him. We believe that the jury was in the best position to make such a determination. R.C. Section 2923.03(D) provides that a jury is to decide whether a person is in fact an accomplice and then must further decide the weight and credibility to be given the accomplice's testimony. That section also mandates that the court warn the jury that this testimony is inherently suspect and should be weighed with grave suspicion and great caution. In the instant case, the trial court, while not precisely parroting the statutory language, informed the jury that it was up to them to decide whether Brad Merrill was in fact an accomplice. The court informed the jurors that if they decided that he was, they must carefully examine his testimony and exercise great caution and grave suspicion. (Tr. p. 723). InState v. Manley, we found that R.C. 2923.03(D) requires only that the trial court state its warning "substantially" and that the instruction need not be read verbatim. (Jan. 21, 1997), Columbiana App. No. 95-CO-53, unreported. Id. The trial court in the instant case more than substantially complied in giving the contents of the instruction.
Appellant's argument that Merrill's testimony was suspect and defective as it was not corroborated is also without merit. All of Merrill's testimony was properly admitted as that of a co-conspirator and as such needed no further corroboration. The Ohio Supreme Court in State v. Evans held that the new version of the accomplice statute, effective September 17, 1986, eliminated the need for corroboration of an accomplice's testimony. (1992) 63 Ohio St.3d 231, 240.
Finding that Merrill's testimony was properly admitted and needed no additional corroboration, we turn to Appellant's argument that the testimony and evidence were insufficient and the verdict was against the manifest weight of the evidence. The Supreme Court of Ohio has determined that "sufficiency of the evidence" and "weight of the evidence" are not synonymous legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380,386. This Court recently held that when reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine the evidence admitted to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Demiduk, (June 24, 1998), Columbiana App. No. 96-CO-16, unreported, citing State v. Jenks (1990), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. To reverse a lower court conviction based on legally insufficient evidence, only a concurring majority of the court of appeals panel reviewing the judgment is necessary.Thompkins, 78 Ohio St.3d at 389.
On the other hand, the weight of the evidence:
 "* * * concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the etidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' "
Id. at 387, quoting Black's Law Dictionary, (6th Ed. 1990), 1594. This Court can reverse on the weight of the evidence only after the State has presented both sufficient evidence to support a conviction and has persuaded the factfinder to convict. Id. at 388, citing Tibbs v. Florida (1982),457 U.S. 31, 41-43.
To reverse Appellant's conviction based upon the weight of the evidence, we must find that " '* * * the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. To reverse a trial court judgment based upon the weight of the evidence, all three judges on the court of appeals panel reviewing the case must unanimously concur. Thompkins, 78 Ohio St.3d at 389.
It should also be emphasized that because we are a reviewing court, "[t]he weight to be given the evidence and the credibility of witnesses are primarily jury issues." State v.Ballew (1996), 76 Ohio St.3d 244, 249, citing State v. Waddy
(1992), 63 Ohio St.3d 424, 430; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Further, we must give deference to the factfinders because they are in the best position to observe the witnesses and their demeanor, gestures and voice inflections and are entitled to believe or disbelieve any witness. State v. Scott (Mar. 9, 1998), Mahoning App. No. 95 C.A. 140, unreported, citing State v. Antill (1964),176 Ohio St. 61.
Based upon either standard, manifest weight or sufficiency of the evidence, the convictions should stand. The testimony of Brad Merrill, although suspect, is strong. We cannot say that the jury lost its way and created such a miscarriage of justice so that the conviction must be reversed. The jury could have found Merrill's testimony more credible and attached greater weight because it appeared to flow more consistently than that found in Appellant's own statement. In his statement, Appellant frequently hesitates and is unable to remember selective details about the incident upon questioning. He frequently repeats that he did not have a clue as to what was occurring inside the Ramirez home, even after he stood and watched as Delgado kicked in the door.
Evaluating the sufficiency of the evidence presented, the jury not only heard Merrill's testimony, but also heard the videotaped statement of Appellant. Based upon the conviction, the jury must have given more credence to the testimony of Merrill, although properly instructed as to the suspicion accompanying his testimony, aware of his role and that his testimony was not firsthand but was from another accomplice, and aware of his immunity from prosecution. Merrill's testimony appeared credible and consistent to the jury and the jurors were in the best position to judge his demeanor and statements. The evidence appears to have an adequate basis for an average mind to convict Appellant of the crimes. We will not substitute our judgment for that of the jury.
With regard to Appellant's contention that the elements of complicity to commit aggravated robbery, aggravated burglary and kidnapping were not proven beyond a reasonable doubt, we find that the testimony of Merrill and the State proved the necessary elements. Appellant argues that he lacked the requisite intent to commit the offenses, that he did not have a weapon with which to conduct these offenses or to restrain Hector and that Merrill was not present at the crime scene so as to be able to determine if Appellant affirmatively acted while in the home.
R.C. Section 2923.03(A)(2) provides the applicable definition of complicity as: (A) "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: (2) [a]id or abet another in committing the offense." The Code itself does not define aiding and abetting, but caselaw provides guidance.
Appellant cites State v. Starr for the proposition that he should not have been convicted of complicity as the State failed to show beyond a reasonable doubt that he advised, assisted or counseled the principals in the commission of the crimes. (1970), 24 Ohio App.2d 56, syllabus. However, Appellant omitted a relevant portion of the holding in Starr, a portion that is applicable to his case. The entire holding states that:
 "Before one can be convicted as an aider or abettor it must be proven beyond a reasonable doubt that he advised, hired, incited, commanded, or counselled the principal to do the act. In short, a conspiracy to do the act must be proven. In the absence of a conspiracy, or some preceding connection with the transaction, one does not aid and abet if he merely sees a crime being committed."
Starr, 24 Ohio App.2d at 58. (emphasis added).
Further, in State v. Monroe (1992), 81 Ohio App.3d 745,746-747, the court quoted State v. Sims (1983), 10 Ohio App.3d 56,58, to define aiding and abetting, finding that: "to aid is to assist. To abet is to incite or encourage." The court also looked to State v. Cartellone (1981), 3 Ohio App.3d 145 to further define aiding and abetting. Cartellone held that:
 "[e]vidence of aiding or abetting another in commission of a crime may be demonstrated by both direct and circumstantial evidence. Thus, '[p]articipation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed.' State v. Pruett (1971), 28 Ohio App.2d 29, 34. Aiding and abetting may also be established by overt acts of assistance * * *"
(1981), 3 Ohio App.3d 145, 150.
Additionally, aiding and abetting can be established by circumstantial evidence, State v. Mootispaw (1996), 110 Ohio App.3d 566,570, has the same value as direct evidence and can be used to prove the essential elements of the offenses beyond a reasonable doubt. Jenks, 61 Ohio St.3d at 272.
Based upon these definitions, evidence existed to show that Appellant committed complicity. Testimony established that Appellant accompanied Delgado and the others to the scene and was present with a gun when Delgado said "we're about to lick these cats." Immediately after this statement, Appellant, Delgado and Fowler got out of the car with guns and walked toward the Ramirez home. Appellant remained inside the home while the crimes were occurring and held Hector Ramirez at bay with a 9mm weapon while the other men were ransacking the home and beating Hector. Appellant's intent to commit both the aggravated burglary and aggravated robbery was established, if not immediately after hearing Delgado's intent to rob Ramirez, at least when Delgado was kicking in the door of the Ramirez home and proceeding and remaining inside, holding a gun on Hector Ramirez. Appellant ran back into the car after the crime with the others and left the scene.
This same testimony also established the applicable elements of aggravated burglary as defined under R.C. section 2911.11 in 1995, including culpability to commit the offense. Appellant himself admitted that Delgado kicked in the door of the Ramirez home, establishing trespass by force. Merrill testified that Appellant had a 9mm weapon in his hands as he exited the car and headed toward the house. Appellant and the others entered the home with guns after Delgado stated that they were going to "lick these cats," or rob Arleen Ramirez, demonstrating the intent to commit a theft offense or felony. Delgado reported to Merrill that Appellant held the gun on Ramirez as Delgado ransacked the home, asked Hector where the drugs were and began beating him. The home was that of Arleen Ramirez, Hector's sister, and he was spending the night there, thus there was an occupied structure that was to be Hector's temporary habitation for the night. Appellant left the scene with the other men.
Based upon the same testimony, under either sufficiency of the evidence or under manifest weight, the State also proved the elements for aggravated robbery under the 1995 version of R.C. section 2911.01. Again, testimony elicited at trial and Appellant's own statement established that Delgado kicked in the door of the Ramirez home after telling Appellant and the others that they were going to rob Arleen Ramirez. Appellant had a 9mm on his person upon entering the home and held the gun on Hector.
Merrill's testimony could have appeared more credible and consistent to the jury who was in the best position to make that determination. Appellant claimed that he fell asleep in the Ramirez home during the ransacking and partial destruction of the house and again fell asleep after returning to the car following the incident. The jury could find it difficult to believe that Appellant was sleeping while Delgado ripped apart the ceiling and walls of the Ramirez home in a search for drugs. Appellant's first assignment of error is without merit.
In his second assignment of error, Appellant contends:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL UNDER CRIM. R. 29(A) SINCE THE STATE FAILED TO SATISFY ITS BURDEN OF PROOF ON THE CHARGE OF COMPLICITY TO COMMIT KIDNAPPING (COUNT IV OF THE INDICTMENT)."
Appellant argues that his motion for directed verdict of acquittal after the State presented its case should have been granted. Appellant argued that Brad Merrill was a pathological liar and that his testimony did not establish a prima facie case for complicity to kidnap. (Tr. pp. 653-654). The trial court initially questioned the charges of complicity to commit robbery and complicity to kidnap and their similarity, but ultimately overruled Appellant's motion and found sufficient evidence for the jury to consider the charges as the offenses contained differing elements. (Tr. p. 658).
Again, Appellant is arguing that Merrill's testimony is insufficient because he was not present in the Ramirez home and only testified as to what he directly observed immediately before the crimes and as to what Delgado told him happened inside of the house after the crimes. Appellant also complains that Merrill's statement that he "guessed" Delgado told him that Appellant watched Hector Ramirez with the gun is insufficient.
In State v. Aaron (Apr. 30, 1998), Mahoning App. No. 95 C.A. 150, we set forth the relevant caselaw as to motions for acquittal:
 "A motion for acquittal at the close of the state's case tests the sufficiency of the evidence. Pursuant to Crim. R. 29(A), a trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves each element of the crime beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, 263 * * *. An appellate court undertakes a de novo review and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all the elements of the crime beyond a reasonable doubt. State v. White (1989), 65 Ohio App.3d 564, 568 * * *. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, * * * paragraph two of the syllabus. State v. Miley (1996), 114 Ohio App.3d 738, 742."
We find that the elements of complicity to commit kidnapping were proven beyond a reasonable doubt under the applicable version of R.C. section 2905.01(A) (3) in that from Merrill's testimony, the jury could have found that Appellant and Fowler restrained Hector Ramirez of his liberty through the threat of their guns and terrorized him by placing a sheet over his head. The jury could have found that they caused serious physical harm through the use of their guns, eventually causing his death, (Tr. p. 567). The jury was in the best position to evaluate the testimony and credibility of Merrill and Appellant's credibility in his videotaped statement to police. Under a de novo review, the jury could have reasonably found Merrill's testimony credible and Appellant's less credible, even though properly warned of the suspicious nature of Merrill's testimony. Again, Merrill's testimony needed no corroboration, R.C. section 2923.03 (D), aiding and abetting can be established by wholly circumstantial evidence,Mootispaw (1996), 110 Ohio App.3d at 570, and has the same value as direct evidence, thus it can be used to prove the essential elements of the offenses beyond a reasonable doubt.Jenks, 61 Ohio St.3d at 272.
Finally, Appellant asserts that he renounced participation in the crimes and so could not be convicted of complicity. Renunciation is an affirmative defense to complicity. If, prior to the commission of or attempt to commit the offense, the actor terminated his complicity under circumstances manifesting a complete and voluntary renunciation of his criminal purpose, the defense is raised. R.C. 2923.03 (E). In this case, the jury could have found that Appellant did not manifest such renunciation. By his own statements, he remained in the Ramirez home during the entire incident and did not leave until the final gunshots were heard. Merrill also testified that he saw all three men running toward his car at the same time after hearing gunshots. Although the defense raised the statement of an eyewitness who said that she saw only two men running down the street after the gunshots were fired, Merrill disputed this statement by saying that he observed all three men running toward his car after the gunfire. Again, this was a question for the jury who was in the best position to determine credibility of testimony and weight of the evidence. We cannot find that the jury lost its way in making such a determination.
For all of the foregoing reasons, we find that the assignments of error advanced by Appellant are without merit. Accordingly, the jury verdict is hereby affirmed.
Donofrio, J., concurs.
Vukovich, J., concurs.
APPROVED:
 ------------------------ CHERYL L. WAITE, JUDGE