The STATE of Ohio, Appellee,

v.

MOOTISPAW, Appellant.

[Cite as *State v. Mootispaw* (1996), 110 Ohio App.3d 566.]

Court of Appeals of Ohio,
Fourth District, Highland County.

No. 95CA873.

Decided April 25, 1996.

*Rocky L. Coss,* Highland County Prosecuting Attorney, for appellee.

*Thomas F. Grennan,* for appellant.

---

HARSHA, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Highland County Court of Common Pleas. A jury found appellant Dennis Mootispaw guilty of grand theft in violation of R.C. 2913.02(A)(1) with a specification that appellant had been previously convicted of two or more theft offenses.

At the outset, we note this case was previously before the court as case No. 93–CA–840, but was dismissed for jurisdictional reasons because the trial court had not ruled upon a motion for a new trial. After the trial court denied that motion,

appellant's counsel filed a second notice of appeal. Pursuant to motions by both parties, this court has allowed the appeal to proceed on the briefs which were filed in the original case.[1]

On January 28, 1993, Shane Davis and Julie Garrison drove Garrison's car to a home in Greenfield, Ohio.[2] When they arrived, they noticed that appellant and appellant's cousin, Anthony Mootispaw ("Anthony"), were in the Davis garage working on appellant's wife's car. Shortly thereafter, Davis and Garrison noticed that one of the tires on her car was flat. Garrison asked Davis to go buy her a used tire to replace the flat one. Appellant agreed to go with Davis to look for a used tire. Garrison gave appellant a personal check for $20 to purchase the tire.

Appellant, Davis and Anthony cashed the check at a local carryout store. The three men then drove to several tire stores before finally stopping at Buck's Tire Service. An unidentified employee told the men that there was a pile of old discarded tires behind the shop that they could search through for a useable tire. They found three tires that appeared to be usable and drove back to the Davis house. After mounting the best tire, they realized that it was also defective, because it had a large knob protruding through the sidewall. Appellant and Davis then drove back to Buck's Tire Service to look for another used tire. Appellant climbed to the top of the tire pile to search for a tire. Davis looked through the tires that were at the bottom of the pile.

While appellant searched through the used tires at the top of the pile, a passerby, Charles Whaley, saw Davis take a tire from a stack of new tires near the used tire pile and place it in Garrison's car. Whaley went into the tire shop and told Bill Buck, the shop owner, that he had seen someone steal a new tire. In the meantime, Davis and appellant placed several used tires from the pile into the passenger area of the car and prepared to leave the tire shop.

Buck ran from the shop and yelled to the two men. Davis, the driver, attempted to drive away, but the car stalled. Buck then ran up to the car, caught a brief glance of the occupants of the car, and yelled at them to stop because he had seen their license plate number. Davis did not stop, but drove away.

Buck reported the theft to the Greenfield Police Department. Upon investigation, Officer Rusty Lowe discovered that the vehicle belonged to Garrison. Officer Lowe also discovered that the vehicle was at the Davis residence. Upon arrival at the Davis residence, the officers knocked on the front door of the house.

---

1. We expressly incorporate the facts as previously stated in our March 17, 1995 decision and judgment entry dismissing case No. 93–CA–840.

2. This home was occupied by Shane Davis's mother and will be referred to as the "Davis" residence, etc.

After being told that the two men were not at the residence, the officers began a search of the premises, including the garage. There, Officer Lowe discovered the stolen tire, several feet from appellant's vehicle. The police impounded the vehicle and the stolen tire.

Officer Lowe and appellant had several telephone conversations in which the officer advised appellant to voluntarily come to the police station and make a statement. Appellant declined to do so and was subsequently arrested after indictment by the grand jury.

After a two-day trial, the jury found appellant guilty of theft, a third degree felony. The trial court immediately sentenced appellant to a two-year prison term.

I. Appellant's First Assignment of Error [3]:

"The weight of the evidence is insufficient to support a verdict of guilty upon a charge of theft or complicity.

"The court abused its discretion when it erred in overruling the defendant's motion for acquital [sic] depriving the appellant of his right of due process of law, under the Fourteenth Amendment of the United States Constitution, and Article I, Section 16 of the Constitution of Ohio."

In his first assignment of error, appellant contends that the state presented insufficient evidence to sustain a conviction for theft and that the trial court erred by failing to grant his Crim.R. 29 motion for judgment of acquittal.[4] Appellant asserts that there is no evidence that he had any involvement preceding the theft of the tire by Davis. For the reasons that follow, we agree.

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.,* citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

---

**3.** On October 19, 1994, this court approved appellant's motion for leave to file a supplemental *pro se* brief. This supplemental brief contained several additional assignments of error which we will incorporate into the existing errors previously alleged on his behalf.

**4.** While counsel's assignment of error uses "weight of the evidence" language, we believe that the focus is upon the separate and distinguishable "sufficiency of the evidence" concept.

Appellant apparently was convicted for complicity in relation to the theft offense committed by Davis. R.C. 2923.03 provides as follows:

"(A) No person, acting with the kind of culpability for the commission of an offense, shall do any of the following:

" * * *

"(2) Aid or abet another in committing the offense[.]

" * * *

"(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted * * * as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."

As stated above, the principal offense which appellant was alleged to have assisted was theft. R.C. 2913.02 outlines the elements of this crime as follows:

"(A) No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent[.]"

■ Although the phrase "aid and abet" is not defined in the complicity statute, the courts of this state have consistently held that "aid" means to assist and "abet" means to incite or to encourage. A person's mere association with the principal offender is not enough, though. *State v. Saunders* (Dec. 1, 1993), Ross App. No. 1896, unreported, 1993 WL 524968; *State v. Sims* (1983), 10 Ohio App.3d 56, 58, 10 OBR 65, 67–68, 460 N.E.2d 672, 674–675. However, the state may demonstrate a person's aiding and abetting of another in the commission of a crime through both direct and circumstantial evidence. *State v. Cartellone* (1981), 3 Ohio App.3d 145, 150, 3 OBR 163, 168–169, 444 N.E.2d 68, 74–75. And, as this court has previously held, "criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *State v. Pruett* (1971), 28 Ohio App.2d 29, 34, 57 O.O.2d 38, 41, 273 N.E.2d 884, 887.

■ Nonetheless, it is incumbent upon the state to establish that the appellant took some affirmative action to assist, encourage, or participate in the crime by some act, deed, word, or gesture. Mere presence at the scene or subsequent physical proximity to the stolen item is not sufficient to allow the case to proceed to the jury. See *State v. Sims* (1983), 10 Ohio App.3d 56, 10 OBR 65, 460 N.E.2d 672; see, also, by analogy *State v. Hankerson* (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362; *State v. Wolery* (1976), 46 Ohio St.2d 316, 75 O.O.2d 366, 348 N.E.2d 351; *State v. Stewart* (May 20, 1985), Ross App. No. 1020, unreported, 1985 WL 11169.

■ Our review of the record fails to reveal any evidence of an affirmative act on the part of the appellant to establish his participation or encouragement of Davis's theft of the tire. The only evidence introduced by the state which implicates appellant's involvement in the theft is the testimony and report of polygraph examiner Chuck Taylor. The results of the polygraph examination were admitted by virtue of a stipulation between the appellant and the state in accordance with *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318. Taylor testified, and his report reflected, that appellant was lying in response to three out of four of the pertinent questions about the theft. Specifically, Taylor felt that appellant was telling the truth when he said he did not steal the tire; however, Taylor felt that appellant was lying when he said he did not see Davis take the tire before leaving Buck's, he didn't know Davis took the tire, and he didn't help steal the tire. Only the last deception carries any potential incriminating value. Appellant's knowledge and observation of Davis's crime, without more, cannot be the basis of a conviction for complicity.

Our review of *Souel, supra,* leads us to conclude that while the polygraph evidence was admissible, it was not sufficient by itself to support a conviction. The *Souel* syllabus states:

"The results of a polygraphic examination are admissible in evidence in a criminal trial for *purposes of corroboration or impeachment,* provided that the following conditions are observed:

" * * *

"(4) If such evidence is admitted the trial judge should instruct the jury to the effect that *the examiner's testimony does not tend to prove or disprove any element of the crime* with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given." (Emphasis added.)

Thus, without corroborating evidence of appellant's affirmative participation in the theft, the jury was not free to use his deceptive statements to prove the elements of complicity. There being no other evidence of appellant's participation in the crime, see *State v. Stewart, supra,* and the cases cited therein, appellant's Crim.R. 29 motion for acquittal should have been granted.

Accordingly, the judgment of the trial court is reversed and the matter is remanded to the trial court with instructions to discharge the appellant.[5]

*Judgment reversed.*

PETER B. ABELE, P.J., and KLINE, J., concur.

---

5. The remainder of appellant's assignments of error are rendered moot. See App.R. 12.