[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This case is before the court on appeal from the Fulton County Court of Common Pleas. That court sentenced appellant to serve six years of incarceration after a jury found him guilty of one count of complicity to commit robbery in violation of R.C. 2923.03(A)(2) and 2911.02(A)(2). Appellant asserts the following assignments of error:
 "I. THE COURT OF COMMON PLEAS ERRED IN SENTENCING DEFENDANT-APPELLANT TO SIX YEARS IN PRISON FOR HIS CONVICTION OF COMPLICITY TO COMMIT ROBBERY, A FELONY OF THE SECOND DEGREE."
 "II. THE COURT OF COMMON PLEAS ERRED IN GRANTING THE REQUEST OF THE STATE OF OHIO TO AMEND THE INDICTMENT TO INCLUDE THE CHARGE OF COMPLICITY AND TO SO INSTRUCT THE JURY DESPITE THE OBJECTION OF DEFENDANT."
 "III. THE COURT OF COMMON PLEAS ERRED IN FAILING TO GRANT THE MOTION OF DEFENDANT APPELLANT FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29." "IV. THE COURT OF COMMON PLEAS ERRED IN THAT THE JURY VERDICT OF GUILTY TO ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Between 4:00 and 4:30 on the morning of August 7, 1996, a man entered Courtview Mart, a 24-hour convenience store in Wauseon, Ohio. He wore dark clothes, a ski mask, and gloves. He pointed a gun at the store clerk and ordered him to lie down on the floor. The clerk kept his eyes closed. While the gun was still at his head, the clerk heard, but did not see, the cash register open at the counter fifteen feet away. He did not hear any noises suggesting the second intruder had any difficulties opening the register.
After a few minutes, the gunman told the clerk to count to one hundred. The gunman told him to count louder. Then, the gunman used the gun to hit the store clerk in the head, causing him to bleed.
The clerk counted to fifteen before he opened his eyes. He discovered he was again alone in the store. When he ran to the counter fifteen feet away, he found the telephone cord had been cut. After hailing a police cruiser on the street, the clerk found that all the money in the cash register had been removed. Also, a blue tackle box without a handle had been taken from a shelf behind and underneath the cash register counter.
The store kept two blue tackle boxes behind the counter. The store maintained a daily minimum cash balance of $1,000 in the tackle box with no handle. The $1,000 usually included bundled and loose bills as well as rolled change. A second blue tackle box with a handle contained tools. It was not taken or disturbed during the robbery. Neither box was visible to customers standing at the counter. Store employees counted the contents of the tackle box containing $1,000 at each shift change. The store had a security camera. Before the robbery, employees rarely loaded video tape into the camera. No video tape was in the camera on August 7, 1996.
Appellant, a college student, worked at Courtview Mart as a clerk for the summer until he quit on August 2, 1996. Appellant spent the evening of August 6, 1996 with Tony Rocha and David Falke. They went to several bars before buying beer to take back to Falke's apartment complex.
The next morning appellant, Falke, Rocha, and two female friends drove to Cedar Point amusement park. A Cedar Point police officer approached Falke's car to investigate why five people were in the parking lot at 2:00 in the afternoon. He saw Falke holding a bag of a green substance, which appeared to be marijuana. The officer searched the vehicle with Falke's consent and found more evidence of marijuana use and possession.
In the trunk, the officer found a blue tackle box in a white garbage bag. It had no handle. When he opened the box, the officer found empty coin wrappers, which appeared to have been cut with a knife or razor. He also found a bank bag with Courtview Mart's name, address, and telephone number printed on it.
The officer also found a black knapsack, which appellant claimed as his. Inside, the officer found clothing, $227 in currency, and two rolls of quarters in clear plastic. The money, in different denominations, was wrapped with $50 wrappers in three bundles. The initials of a Courtview Mart cashier appeared on one wrapper, together with the date, "7-26-96". A knife was also in the knapsack.
All five passengers voluntarily emptied their pockets. Appellant was carrying $324. Rocha, Falke, and one female passenger each had large amounts of bills in small denominations. The police learned that the group had rented a nearby motel room. Further investigation revealed it was registered in appellant's name, who had allegedly paid $168 for the room.
The Cedar Point police charged appellant, Rocha, and Falke with minor misdemeanor drug abuse. The Cedar Point police, located in Erie County, contacted the Wauseon Police Department, located in Fulton County. Sergeant Copeland of the Wauseon Police Department traveled to Erie County jail and interviewed appellant, Falke, and Rocha. Rocha matched the clerk's description of the gunman's height and weight. All three explained that appellant had found the tackle box in a public restroom.
Eventually, Falke described the robbery in detail and told Sergeant Copeland that appellant and Rocha robbed the Courtview Mart store. Falke said it was easy because appellant, as a former employee, knew where to find everything in the store. The store clerk identified Rocha's voice from a voice analysis as the gunman who commanded him to "lie down" and "count louder".
Appellant, Falke, and Rocha were charged with receiving stolen property in Erie County. On August 26, 1996, appellant was indicted in Fulton County for aggravated robbery, in violation of R.C. 2911.01(A)(1), robbery, in violation of R.C. 2911.02(A)(2), and felonious assault, in violation of R.C. 2903.11(A)(2). Each charge carried a gun specification under R.C. 2941.145.
At trial in November 1996, Falke acknowledged that he had spent the previous evening with Rocha and appellant. All three returned to Falke's apartment complex. According to Falke, appellant and Rocha took Falke's mother's car to buy beer at approximately 2:30 a.m. Falke testified he went to sleep and did not see them again until all three went to breakfast around 9:00 a.m. Falke testified that Rocha and appellant talked about the Courtview robbery during breakfast.
Appellant testified that he had passed out in the backseat of Rocha's car at the apartment complex and did not wake until 7:00 a.m. When he went to breakfast with Rocha and Falke, Falke allegedly gave appellant a backpack, which contained the store's cash bag. According to appellant, Falke told him that the money inside a blue tackle box was for appellant and Rocha. Appellant admitted he put three bundles of one dollar bills into a black knapsack before leaving for Cedar Point.
At the close of appellee's case, appellant moved for acquittal on all three firearms specifications, arguing the state had not shown operability. The trial court took the motion under advisement. After appellant rested his case, the trial court granted appellant's motion and dismissed the three gun specifications. Then, appellee moved to amend the indictment to add three counts of complicity. The trial court granted that motion over appellant's objection.
The jury acquitted appellant of five of the six charges. The jury found appellant guilty of complicity to commit robbery. On November 11, 1996, appellant moved for a new trial under Crim.R. 33. On February 27, 1997, appellant moved to dismiss the complicity to commit robbery conviction under Crim.R. 29. On May 18, 1997, the trial court denied appellant's Crim.R. 33 motion for a new trial. The record does not indicate whether the trial court granted or denied appellant's Crim.R. 29 motion. On May 23, 1997, the trial court sentenced appellant to serve six years of incarceration.
In his second assignment of error, appellant contends that the trial court erred by allowing appellee to amend the indictment to add three counts of complicity over appellant's objection. Appellee moved to amend the indictment after the defense rested and after the trial court granted appellant's motion for acquittal under Crim.R. 29 on three gun specifications. Appellant argues that by amending the indictment to include complicity charges, appellee changed the name and identity of the crimes being tried and violated Crim.R. 7(D), which provides in relevant part:
 "The court may at any time, before, during, or after a trial amend the indictment, information, complaint or bill of particulars in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identify of the crime charged. * * *"
See, also, R.C. 2941.30.
An indictment provides an accused with adequate notice and opportunity to defend and prevents multiple prosecutions for the same offense. State v. Sellards (1985), 17 Ohio St.3d 169,170. However, the complicity statute, set forth in R.C.2923.03(F), provides that an accomplice to an offense shall be prosecuted and punished as if he were a principal offender. R.C.2923.03(F) expressly provides that a charge of complicity may be stated either in terms of the complicity statute or in terms of the principal offense. As a result, "a complicity conviction will be sustained under an indictment solely employing the terms of the principal offense, and an amendment of the indictment is not necessary." State v. Ensman (1991), 77 Ohio App.3d 701, 705
(citations omitted).
Because appellant was indicted on the principal charges, amending the indictment to add complicity to commit the principal charges did not deprive appellant of adequate notice or opportunity to defend. Whether his role was as an accomplice or a principal, appellant was still being tried for aggravated robbery, robbery, and felonious assault. Thus, the amendment did not alter the name or identity of the crimes charged. See Statev. O'Brien (1987), 30 Ohio St.3d 122, 125-126. The trial court did not err by permitting appellee to amend the indictment to add complicity charges, and appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant contends that the trial court erred by not granting his Crim.R. 29 motion to dismiss the conviction of complicity to commit robbery. Appellant argues that the appellee did not prove that appellant had taken some affirmative action to assist, encourage, or participate in the principal robbery.
We cannot review this assignment of error. First, appellant's motion for judgment of acquittal after a verdict was not filed within fourteen days after the jury was discharged. Crim.R. 29(C). Second, the record does not indicate whether the trial court permitted additional time for appellant to file such a motion. In any event, the record does not show whether the trial court decided appellant's motion for judgment of acquittal after the verdict.
Where the record does not reveal whether the trial court declined to reach the merits of the motion because it was filed untimely, we must presume that it was implicitly denied. See Cityof Niles v. Holloway (Oct. 3, 1997), Trumball App. No. 96-T-5533, unreported, (by filing a judgment entry of guilt, a trial court implicitly overrules a Crim.R. 29 motion for acquittal raised at the close of the defense). Appellant's third assignment of error is found not well-taken.
In his fourth assignment of error, appellant contends that his conviction is against the manifest weight of the evidence. Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard we must use to review whether the manifest weight of the evidence sustains a conviction:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."
Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Only if we conclude that the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
55 Ohio St.2d 261 2925.03 Appellant was convicted of complicity to commit robbery under R.C. 2911.02(A)(2), 2925.03 which states:
 "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * *
 "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another * * *"
No eyewitness testified that they saw appellant rob Courtview Mart in the early morning hours of August 7, 1996. Nonetheless, the evidence showed that the persons who robbed the store that morning knew where to find cash immediately. The store clerk testified that he heard a second person open the cash register without hesitation. That witness, and others, testified that only an employee or former employee would know that one tackle box under the counter routinely contained $1,000. That tackle box was taken during the robbery, while a similar tackle box, containing tools, was left behind. The robbers cut the telephone line to impair the clerk's ability to contact police. In contrast, they made no efforts to reduce the risk of being videotaped by a security camera, which employees knew rarely contained film. Appellant was an employee of Courtview Mart until five days before the robbery.
Within ten hours after the robbery, appellant was discovered with a significant amount of cash. Appellant acknowledged to police that he owned a black knapsack in the trunk of the car. The sack contained cash, bundled in wrappers used by Courtview Mart.
Police found appellant in the car with four others, including his friend, Tony Rocha. Appellant was the only one who had worked at the store. The testimony was uncontroverted that someone matching the description of Rocha held a gun to the store clerk's head and hit him with it. Direct and circumstantial evidence inherently possess the same probative value. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. Determinations of witness credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
The jury acquitted appellant on the principal charges of aggravated robbery, robbery, and felonious assault, as well as two complicity charges. Accordingly, we conclude that the greater amount of credible evidence supports the jury's verdict finding appellant guilty of complicity to commit robbery beyond a reasonable doubt. R.C. 2923.03(A)(2) and 2911.02(A)(2); see Statev. Mootispaw (1996), 110 Ohio App.3d 566, 571. We are unable to conclude the jury lost its way or created a miscarriage of justice in finding appellant guilty of complicity to robbery. Accordingly, appellant's fourth assignment of error is found not well-taken.
In his first assignment of error, appellant contends that the trial court abused its discretion in sentencing him to serve a term of six years of incarceration for his second degree felony conviction. However, after Am.S.B. 2 became effective on July 1, 1996, an appellate court no longer reviews felony sentences under an abuse of discretion standard. Instead, we review whether clear and convincing evidence supports a felony sentence.
Under R.C. 2953.08(A), a person convicted of a felony may appeal as of a right from a sentence in the following circumstances:
 "(1) The sentence consisted of or included the maximum prison term allowed for the offense by [R.C. 2929.14(A)] * * *, and the court imposed it under one of the following circumstances:
"(a) The sentence was imposed for only one offense.
 "(b) The sentence was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree.
 "(2) The sentence consisted of or included a prison term, the offense for which it was imposed is a felony of the fourth or fifth degree or is a felony drug offense * * *, and the court did not specify at sentencing that it found one or more factors specified in [R.C. 2929.13(B)(1)(a) to (I)] * * *.
"(3) The sentence is contrary to law."
Appellant has no appeal as of right from a sentence which is less than the maximum eight year prison term set for a second degree felony. R.C. 2953.08(A)(1). R.C. 2929.14(A)(2) permits a trial court to impose a definite prison term of two, three, four, five, six, seven, or eight years of incarceration for a second degree felony.
Under R.C. 2953.08(A)(3), the trial court's sentence is not contrary to law. The trial court sentenced appellant to more than the minimum for a first time prison term. However, the trial court found the shortest term would demean the seriousness of the offense and not adequately protect the public prior to imposing the six year sentence, as required by R.C. 2929.14(B). Appellant used knowledge gained as an employee to participate in a theft offense where a store clerk was physically harmed.
Having reviewed the record as required by R.C.2953.08(F), we find that clear and convincing evidence in the record supports the trial court's decision to impose a six-year sentence, which was more that the minimum for a first time prison term and less than the maximum for a felony of the second degree.
Appellant's first assignment of error is found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Fulton County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 7/1/92.
 _______________________________ George M. Glasser, J.
JUDGE
 ______________________________ Melvin L. Resnick, J.
JUDGE
 _____________________________ James R. Sherck, J.
JUDGE
CONCUR.