Defendant-appellant, Juan Bennett, was convicted, after a jury trial, of complicity to aggravated robbery, complicity to robbery, complicity to assault, complicity to felonious assault, and complicity to petty theft. We affirm.
In the early morning hours of July 19, 1997, Tim Taylor and Aaron Jeffery decided to walk to the store for a late night snack. On the way, the two boys walked through a local park where they encountered a group of gang members including appellant, Nick Stevens, Phillip Davis, Ryan White, and several others. Testimony at trial established that appellant was the highest ranking member, the "OG" (original gangster), of the Deuce Hoover 187 West Side Crips. Taylor and Jeffery walked by the gang and were leaving the park when appellant challenged Stevens and Davis to catch up with Taylor and Jeffery and see what they had on them. Appellant chided Stevens and Davis telling them that they were "punks" and they didn't have any "heart." Several of the gang members gathered around Taylor and Jeffery, and appellant called out, "What's 409 plus 1"? At appellant's signal, White assaulted Jeffery and Stevens assaulted Taylor. Testimony established that a "410" is a recognized gang signal indicating that all gang members are to jump in and participate in beating up the victims. Jeffery suffered minor injuries, but was able to escape. Taylor was knocked unconscious, suffered serious head trauma, and sustained permanent brain damage as a result of the beating. In addition, the gang stole $2 and a pair of Nike sport sandals from Taylor.
Although appellant did not directly participate in the beating or the robbery, he was convicted of five separate complicity charges in violation of R.C. 2923.03.[1] Appellant filed this timely appeal raising four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE AN UNEDITED AUDIOTAPE OF AN INTERVIEW OF THE APPELLANT WITH A TRANSCRIPT THAT HAD PREVIOUSLY BEEN REDACTED FOR CONTAINING PREJUDICIAL AND INADMISSIBLE STATEMENTS.
During the state's case-in-chief, the prosecutor played an audio taped interview between appellant and Detective Meyers. The recording had been transcribed for the jury to follow along. However, several portions of the transcript contained inadmissible material and were redacted. The corresponding comment by the trial court reported in the trial transcript states as follows: "WHEREUPON, the audio tape was played for the Jury [Exhibit 4 attached]. Tape began at the top of page 46 but any redactions made on the transcript were not deleted from the audio tape."
After the trial transcript had been submitted to this court on appeal, the prosecutor approached F. Rosalind Smith, the court reporter at trial, and pointed out that her comment in the record was mistaken. At the prosecutor's bequest, Smith listened to the tape of the trial proceedings again and discovered that the prosecutor was correct. The redacted portions of the transcript had been muted when the tape was played for the jury. Therefore, the record was mistaken in stating that "any redactions made on the transcript were not deleted * * *."
On October 29, 1998, appellee filed a motion in this court to correct the record. Appellant did not oppose appellee's motion by his own motion or in his reply brief. Likewise, appellant did not dispute the accuracy of Smith's affidavit or appellee's proposed correction to the record. Since the correction was undisputed, we granted appellee's motion to correct the record under App. R. 9(E) on November 13, 1998.[2] The record now states as follows: "[T]he audio portion which the Jury heard matched the typewritten transcript of the taped statement and that any redactions reflected on the typewritten transcript were not
heard by the Jurors * * *." (Emphasis sic.) Since the record has now been corrected to reflect that the jurors did not, in fact, hear any inadmissible portions of the audio tape, appellant's first assignment of error lacks a basis in fact. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO ACCEPT APPELLANT'S JURY INSTRUCTION ON AIDING AND ABETTING.
To assist in the definition of "aiding or abetting," counsel for appellant proposed the following jury instruction based upon State v. Mootispaw (1996), 110 Ohio App.3d 566:
 For purposes of finding the existence of aiding or abetting, a person's mere physical presence at the scene or association with the principal offenders is not enough. It is incumbent upon the State to establish that the Defendant took some affirmative action to assist, encourage, or participate in the criminal activity by some act, word, or gesture.
The prosecutor objected to the proposed instruction stating that it was unnecessary. However, the prosecutor proposed, in the alternative, that if the court did adopt theMootispaw instruction, the following additional language fromMootispaw should also be included: "Criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed." The court declined to give either Mootispaw instruction. Instead, the court defined "aiding and abetting" according to the Ohio Jury Instructions. The trial court's general charge to the jury stated, "Aid means to help, assist, or strengthen. Abet means to encourage, counsel, incite, or assist." 4 Ohio Jury Instructions (1997), Section 523.03.
A defendant is entitled to have his requested instruction included only when it is a correct statement of the law, pertinent, and not already included, at least in substance in the general charge. State v. Theuring (1988), 46 Ohio App.3d 152. There is no error on the part of the trial court in failing to include the precise language requested by counsel, so long as the substance of the law is contained in the general charge. State v. Perryman (1976), 49 Ohio St.2d 14, 29, vacated on other grounds (1978), 438 U.S. 586, 98 S.Ct. 3136.
The trial court did not include the precise language fromMootispaw which stated that "presence at the scene or association with the principal offenders is not enough" or that the defendant must have taken "some affirmative action" to be guilty of aiding or abetting. However, the definition provided by the trial court clearly indicated that something more than appellant's mere presence was required before he could be guilty of aiding or abetting. Therefore, we find that the substance of Mootispaw was included in the court's general charge, and the court did not err by declining to include appellant's proposed instruction. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 APPELLANT'S CONVICTION, AS A MATTER OF LAW, WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.
When reviewing a claim of insufficient evidence, our inquiry focuses on whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Clemons (1998), 82 Ohio St.3d 438,444, certiorari denied (1999), ___ U.S. ___, 119 S.Ct. 816. Sufficiency of the evidence is the legal standard applied to determine whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. We must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Several witnesses testified that appellant was the "OG" of the Deuce Hoover 187 West Side Crips. Several witnesses also testified that appellant challenged Stevens and Davis, as lower level gang members, by stating that they were punks and that they "didn't have no heart." Stevens testified that appellant told him to go over to Taylor and Jeffery and see how much money they had on them. Also, several witnesses testified that appellant was the one who called "what's 409 plus 1" signifying "410," a signal for a "beat down" of Jeffery and Taylor.
The foregoing testimony, if believed, was sufficient as a matter of law to convince the average juror of appellant's guilt. After viewing the evidence in a light most favorable to the state, a rational factfinder could have found that the essential elements of each of appellant's crimes were proven beyond a reasonable doubt. Appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 APPELLANT'S CONVICTION SHOULD BE REVERSED BECAUSE IT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
For a court of appeals to reverse a trial court's judgment on the weight of the evidence, when the judgment resulted from a trial by jury, the appellate court must unanimously disagree with the factfinder's resolution of any conflicting testimony.State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In this case, there was conflicting testimony regarding whether or not appellant actually exerted authority over Davis and Stevens and whether or not he encouraged or incited them to commit the crime. There was also conflicting testimony regarding whether appellant or someone else actually called the "410." However, we are not convinced that the greater weight of the evidence weighs heavily against appellant's conviction. This case does not rise to the level of an "exceptional case" warranting a new trial simply because all testimony among all witnesses was not entirely consistent. We are not convinced that the jury lost its way or created a manifest miscarriage of justice. Appellant's fourth assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] R.C. 2923.03 states in part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense;
* * *
 (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.
[2] App. R. 9 states in part: (E) * * * If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected[.]