OPINION
Defendant-appellant, David K. Manis, Jr., appeals his conviction in the Clermont County Court of Common Pleas for theft.
Appellant was indicted in August 1998 on one count of burglary in violation of R.C. 2911.12(A)(2), a second degree felony, and one count of theft in violation of R.C. 2913.02(A)(1),[1] a fifth degree felony. The charges stemmed from an incident that occurred on July 7, 1998, wherein appellant, along with William Anthony "Tony" King ("Tony") and Brandon Key ("Brandon"), allegedly broke into the Carriage Station Drive residence of Kenneth and Janet Smith in Batavia, Ohio and stole several belongings. Tony and Brandon were subsequently charged with one count each of second degree felony burglary and one count each of theft. Both pled guilty to one count each of third degree felony burglary and were sentenced accordingly. Appellant pled not guilty. A jury trial held on August 9-12, 1999 revealed the following facts:
On July 7, 1998, both appellant and Tony were working for Coast to Coast Food Distributors, Inc. ("Coast"), a wholesale food distribution company, selling meat and seafood products door-to-door. That day, appellant and Tony, who was a trainee, picked up Brandon. The three decided to sell Coast's products in the Batavia area because appellant needed to attend a class that evening near Batavia. Although Brandon had worked in the past for Coast, he was not employed by Coast on that day. Appellant testified he was told by Coast's owner to pick up Brandon so that Brandon could drive Tony while appellant was in class. Appellant also testified that they picked up Brandon to drive Coast's truck because appellant's and Tony's driving licenses were both suspended.
Appellant testified that he drove the truck on July 7, 1998 only twice, to wit: when he picked up Brandon in the morning, and from his evening class back to Coast. Appellant testified that except for those two times, Brandon was the sole driver of the truck. Both Tony and Brandon testified that except when he was in class, appellant was the sole driver of the truck. It is undisputed that all three men went to Carriage Station Drive, Batavia where appellant and Tony sold meat to a neighbor of Kenneth and Janet Smith. Thereafter, all three went to the Smiths' residence. No one was home. Accounts as to what happened next differ.
Tony testified that appellant then formed the plan of burglarizing the Smiths' residence. As all three men were pulling out of the driveway, appellant obtained the names and address of the Smiths by retrieving some of the Smiths' mail from their mailbox. All three men then went to a nearby United Dairy Farmers ("UDF") store where appellant called the residence to make sure no one was home. Upon returning to the residence, appellant and Brandon broke into the house,[2] stole a compact disk player ("CD player"), a laptop computer, and jewelry, and carried the stolen items to the truck. Thereafter, all three men drove to a secluded area where appellant and Brandon disposed of the jewelry. The three men then resumed selling meat until Tony and Brandon dropped appellant off at his class at about 6:00 p.m. Upon picking up appellant at about 9:00 p.m., all three men went to an apartment complex where appellant and Brandon unsuccessfully tried to trade the CD player for marijuana. Appellant subsequently threw the CD player in a dumpster in the Sharonville area. Brandon kept the laptop computer. Upon returning the truck to Coast, all three men went their separate ways.
Brandon's version slightly differed from Tony's version. Brandon testified that upon retrieving the Smiths' mail, all three men went to UDF where he (Brandon) called the house. Upon returning to the house, all three walked around the house looking for a way to get in. After Brandon successfully broke into the house, he unlocked a back door and appellant and Tony went into the house. While Tony took the CD player and the laptop computer, Brandon could not remember appellant removing a specific item from the house or carrying any stolen item back to the truck. Before dropping off appellant at his class, all three men disposed of some of the jewelry in a secluded area. Upon picking up appellant, all three men disposed of the CD player and the rest of the jewelry in a dumpster in the Sharonville area. Brandon kept the laptop computer and was thereafter dropped off. He eventually disposed of the computer.
Appellant gave a different version of the facts. Appellant testified it was Brandon who suggested they break in the house and who retrieved the Smiths' mail. Appellant did not think Brandon was serious and suggested they go to UDF to get a drink and something to eat. At UDF, Brandon called the residence. Thereafter, Brandon drove all three men back to Carriage Station Drive. Upon realizing that Brandon was serious about breaking in the Smiths' residence, appellant asked to be and was let out of the truck. Tony and Brandon then "zoomed on down the road" and proceeded to break into the Smiths' residence and steal some of their belongings. Meanwhile, appellant began knocking on a couple of doors to sell meat even though the meat products were in the truck with Tony and Brandon. No one was home. Just as appellant realized he did not have any products to show, Tony and Brandon came back and picked him up.
Appellant testified he got in the truck because it was his only transportation to his class and his ride home. Once in the truck, appellant told Tony and Brandon "when you guys come pick me back up from my class tonight, I don't want any of this stuff in my truck. I don't want it nowhere around me or nowhere near me nor in this truck." Thereafter, appellant, Tony, and Brandon went to another neighborhood where they sold meat door-to-door for about two hours. Tony and Brandon dropped appellant off at his class at about 6:00 p.m. and picked him up at 9:45 p.m. Thereafter, after dropping off Brandon, appellant and Tony drove back to Coast.
Appellant denied (1) touching or going through the stolen items, (2) trying to trade the CD player for marijuana, (3) disposing or helping dispose of the stolen items, or (4) helping plan or commit the burglary or the theft.
Deputy Sheriff Michael Robinson investigated the burglary and theft. He first contacted Tony, then Brandon and appellant. While Tony and Brandon acknowledged their involvement in the burglary and theft, appellant never admitted committing those crimes. Deputy Robinson testified that the very first time he talked to Tony and Brandon, they both told him appellant had been an active participant in the crimes. Appellant admitted that while he knew what Robinson was asking about, he did not tell Robinson what he knew about the crimes. Appellant testified that following his conversation with Robinson, he called the deputy back and set up a meeting to tell Robinson everything he knew about the crimes. However, Robinson never came to the meeting. Robinson testified that appellant never called back or contacted him. Had appellant done so, Robinson stated he would have followed up.
On August 12, 1999, a jury acquitted appellant of the burglary charge but found him guilty of theft. Appellant was subsequently sentenced accordingly. This appeal follows.
In his sole assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. Specifically, appellant claims that the state failed to show beyond a reasonable doubt that he "obtained or exerted control" over the Smiths' property.
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 389. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In this case, appellant was apparently convicted for his complicity in the theft offense committed by Tony and Brandon.[3] R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" To establish that an accused acted as an aider and abettor to a crime, the state must prove the accused incited, assisted, or encouraged the criminal act. See State v. Sims
(1983), 10 Ohio App.3d 56; see, also, State v. Mootispaw (1996),110 Ohio App.3d 566. An accused who is indicted as a principal may be convicted on proof that he was an aider and abettor. Statev. Strub (1975), 48 Ohio App.2d 57; R.C. 2923.03(F).
Evidence of aiding and abetting another in the commission of a crime may be demonstrated by both direct and circumstantial evidence. State v. Cartellone (1981), 3 Ohio App.3d 145, 150. "Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." State v. Pruett (1971), 28 Ohio App.2d 29, 34.
A person's mere association with a principal offender is not enough to sustain a conviction based upon aiding and abetting.Sims at 58. "Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act." Id. at 59. Similarly, mere presence at the scene or subsequent physical proximity to the stolen item is not sufficient to sustain a conviction based upon aiding and abetting. Mootispaw,110 Ohio App.3d at 570. To the contrary, there must be some level of active participation by way of providing assistance or encouragement. State v. Nievas (1997), 121 Ohio App.3d 451, 456.
On the other hand, "[o]ne may be found to be an aider and abettor in the commission of a crime even though he was not actually present at the time the crime was committed; such presence may take the form of constructive presence. Examples of such are drivers of vehicles used in perpetrating crimes." Statev. Trocodaro (1973), 36 Ohio App.2d 1, 6.
Upon thoroughly reviewing the record, we find that the evidence supports a finding that appellant aided and abetted Tony and Brandon in committing the theft offense. Both Tony and Brandon testified that appellant was the driver of Coast's truck at all times on July 7, 1998. Appellant testified that except when he picked up Brandon in the morning and when he returned the truck after his class, he did not drive the truck. Appellant also denied being at the Smiths' residence when Tony and Brandon broke in and stole belongings of the Smiths. Although appellant denied being at the scene and driving the truck used in perpetrating the crimes, the jury was free to resolve this conflict of evidence in favor of the state. Our review of the evidence fails to persuade us that the jury lost its way and created a manifest miscarriage of justice by doing so.
Even assuming without finding that appellant did not drive the truck before or after the theft offense, we nevertheless find that appellant was not a mere passenger in the truck, but instead aided and abetted Tony and Brandon in committing the theft offense. Appellant admitted that there were only two Coast employees in the truck that day, himself and Tony. Appellant further reluctantly admitted that by training Tony that day, appellant was in charge. The record clearly shows that appellant, knowing full well that Tony and Brandon were going to burglarize the Smiths' residence, nevertheless let them keep the truck which, in turn, facilitated the theft by allowing Tony and Brandon to load the stolen items in the truck. Thereafter, rather than contacting the authorities or finding another type of transportation, appellant instead chose to stay in the neighborhood and sell meat door-to-door while the burglary and theft were taking place. Appellant clearly testified he was fully aware of Tony's and Brandon's criminal actions while appellant was allegedly trying to sell meat. Upon picking up appellant, the three men then went on to sell meat for two hours, all the while driving around with the stolen items in the truck. The record also clearly shows that appellant not only tacitly allowed Tony and Brandon to remain in the truck, but also allowed them to use the truck to dispose of the stolen items while appellant was in class.
As already noted, "[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." Pruett, 28 Ohio App.2d at 34. We find that by appellant's foregoing conduct before and after the theft offense, Tony and Brandon obtained property which did not belong to them. As a result, appellant effectively assisted Tony and Brandon in perpetrating a theft offense. We therefore hold that appellant's theft conviction was not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.
 _____________________________ WALSH, J.
YOUNG, P.J., and VALEN, J., concur.
[1] R.C. 2913.02(A)(1) states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"
[2] Tony testified that he did not break in the house but that he stayed in the truck at all times.
[3] With regard to the theft charge, the trial court instructed the jury that appellant could be held responsible as an accomplice.