Defendant-appellant Rubin John Szerlip appeals his conviction and sentence from the Mount Vernon Municipal Court on two counts of advertising on private property in violation of Mount Vernon Codified Ordinance Section 503.01, minor misdemeanors. Plaintiff-appellee is the City of Mount Vernon.
 STATEMENT OF THE FACTS AND CASE
On March 2, 1999, an affidavit was filed in the Mount Vernon Municipal Court charging appellant with three violations of Mount Vernon Codified Ordinance Section 503.01, which prohibits advertising on private property without the permission of the owner. The affidavit specifically alleged that appellant had violated such section by sticking or posting "any advertisement, poster, sign or handbill, or placard of any description" upon Joshua Sapp's vehicle without Sapp's permission (Count A), on Thomas Waddell's vehicle without Waddell's permission (Count B), and on Susan Kent's vehicle without Kent's permission (Count C). At his arraignment on March 5, 1999, appellant entered a plea of not guilty to the charges contained in the affidavit. Subsequently, a bench trial at which appellant represented himself was held on January 19, 2000. The following evidence was adduced at trial. On February 13, 1999, Joshua Sapp, an employee of Wal-Mart, found a flyer located on the windshield of his car, which was parked in the parking lot of the Wal-Mart located in Mount Vernon, Ohio. Sapp, when questioned, testified that he had not given anyone permission to place the flyer on his car and that he did not know who had done so. At trial, Sapp identified appellee's Exhibit 1, which is a flyer captioned "The Gospel Truth" containing allegations regarding Carol Szerlip, appellant's ex-wife, as a copy of the flyer that he discovered on his car when he got out of work. At the trial in this matter, Thomas Waddell also testified. Waddell testified that, on February 13, 1999, his vehicle was parked in the parking lot of the Mount Vernon Wal-Mart. Waddell, who testified that his daughter was driving his car that day and that he was not present in Wal-Mart's parking lot on such date, was unable to identify appellee's Exhibit 1. Waddell did testify, however, that his daughter told him that she saw someone removing a flyer from her car when she exited the Wal-Mart. The next witness to testify at trial was Susan Kent. Kent testified that, after finishing shopping at Wal-Mart on February 13, 1999, she found a piece of paper under her windshield wiper. Kent identified appellee's Exhibit 1 as that piece of paper. Kent further testified that she had not given anyone permission to place the piece of paper on her windshield and that she did not know who had placed the paper there. According to Kent, the piece of paper referred to Carol Szerlip's ex-husband. At trial, Ron Bevington, the assistant manager of the Mount Vernon Wal-Mart, testified that on February 13, 1999, "[w]e had customers coming in, handing us flyers and saying they're being placed on their windshields." Trial Transcript at 33. Bevington identified appellee's Exhibit 2 as the flyer. Since Bevington had not given anyone permission to put the flyers on the vehicles and since Wal-Mart's policy prohibits any solicitation in the form of flyers placed on vehicles, Bevington contacted the police about the solicitation. Bevington, who did not know the identity of the person placing the flyers, testified that "[t]here was two flyers. This happened once, and on the bottom of the flyer, it says will continue in approximately about a week, more updates. And we also got another flyer in about a week and a half later." Trial Transcript at 35. The next witness to testify at trial was George M. Hartz, a patrolman with the City of Mount Vernon Police Department. Officer Hartz testified that, on February 12, 1999, he had received a complaint from John Kuhn, the Principal at the high school, that several flyers had been placed on vehicles at the school that day. Officer Hartz testified that, later the same day, flyers were placed on vehicles at the Burger King. When questioned, the officer identified appellee's Exhibit 2 as "a Gospel Truth Flyer that were on the — same — similar to the ones that were on the cars at the high school and Burger King." Trial Transcript at 38. At approximately 4:00 P.M. on February 12, 1999, Officer Hartz spoke to appellant by telephone. When, during the telephone conversation, Officer Hartz told appellant that he was calling about the flyers on the cars at the high school and the Burger King, appellant `immediately stated, "yes, that was me. I did that.'" Trial Transcript at 39. Officer Hartz further testified as follows: "I asked if he [appellant] would be available to make a written statement on the following morning; he said he would be. He indicated he had, in addition, 250 more flyers and he intended to pass those out on Friday [February 12th] or over the weekend." Trial Transcript at 40. During cross-examination, Officer Hartz testified that when he spoke with appellant again on February 13, 1999, appellant told the officer that he had not printed the flyers himself and that he was going to "hire some people to place flyers on his behalf" and was "going to intensify his advertising efforts, placing flyers more often and in more places." Trial Transcript at 46. At such time, the officer advised appellant that, by passing out the flyers, he was violating Mount Vernon City Ordinance Section 503.01 and that he could be charged if he continued doing so. Principal John Kuhn also testified on behalf of appellee. Kuhn testified that, after receiving complaints in February of 1999 about flyers being placed on vehicles in the high school parking lot, he contacted appellant. At the January 19, 2000 trial, Kuhn testified as follows: "I called him [appellant] to inform him that there were some flyers being placed in the central office parking lot that appeared to be written as if he had written them about his ex-wife, Carol, and specifically to let him know that this was inappropriate because we have children who travel back and forth through our parking lots and the material was, that was in them, wasn't acceptable."
Trial Transcript at 60. Kuhn further testified that appellant "responded to me by saying that he had distributed those, written those and would continue to do so as it was his right. And uh then he also said that — he, he said that he would continue to distribute them. . . ." Id. Kuhn did not personally see who had posted the flyers. However, when Kuhn was questioned by appellant during cross-examination, Kuhn responded as follows: "You [appellant] indicated to me that you were responsible for the posting of the flyers." Trial Transcript at 62. Kuhn identified appellee's Exhibit 2 as the flyer that a couple of assistant treasurers and secretaries showed to him after taking it off of their windshields. Kuhn further testified that appellee's Exhibits 1 and 2 appeared to be identical. The final witness to testify for appellee was Patrolman Jason Beever of the Mount Vernon Police Department. Patrolman Beever testified that, on February 13, 1999, he went to Wal-Mart in response to a complaint about flyers being placed on vehicles in the parking lot that "were possibly the same flyers which were in regard to a report that Officer Hartz had already taken a report on." Trial Transcript at 74. Officer Beever, who observed the store manager and employees removing the flyers from the vehicles, testified that appellee's Exhibit 2 appeared to be one of the flyers. After investigating the incident and obtaining statements from Joshua Sapp, Susan Kent and Thomas Waddell, owners of several of the vehicles, Patrolman Beever signed the affidavit charging appellant with the three violations of Mount Vernon City Ordinance Section 503.01. Kelly Strayer was the first witness called by appellant. Strayer, when presented with appellee's Exhibit 2, testified that she had seen such exhibit at appellant's house. According to Strayer, appellant hired a man named Richard Mussaro, who worked for appellant, and other unnamed individuals to pass out the flyers. At trial, Strayer identified a check to Richard Mussaro as payment for his work in distributing the flyers. While Strayer testified that she never heard appellant give any instructions to Mussaro or anyone else as to how, where or when to distribute the flyers, she also testified that she heard appellant tell John Kuhn that he wrote the flyers and was going to continue writing them. After Stayer finished testifying, appellant took the stand. Appellant testified at trial as follows: "Your Honor, I never posted any flyer of any description or any way shape or form as alleged in the complaint against me. I did not and still do not believe that as an employer that I have any responsibility for how these are distributed." Trial Transcript at 109. During cross-examination, appellant testified that he had created the flyer captioned "The Gospel Truth" and that he had hired Richard Mussaro to distribute the same. Appellant, who testified that over 100 of the flyers were created, denied instructing Musarro as to where to distribute the flyers although he did tell Mussaro to distribute the flyers to "large groups of people". Appellant also testified that he "probably" told Patrolman Hartz that he placed the flyers on the vehicles at the high school and the Burger King and that he intended to put out 250 more flyers on February 12, 1999. Trial Transcript at 113. Appellant also admitted that, during his February 13, 1999, conversation with the same officer, he indicated he was going to "intensify" his advertising efforts by placing flyers more often in more places and that he was advised by the officer that, by doing so, he would be in violation of Mount Vernon City Ordinance Section 503.01. When appellant was asked whether he had stated that he would continue passing out flyers, appellant responded in the affirmative. In discussing his February 13, 1999, conversation with the officer, appellant testified as follows: "In regards to the 13th, I did inform that I was going to continue, that I was going to hire somebody, and I did on that statement, follow through." Trial Transcript at 114. At the conclusion of the evidence, the trial court found appellant guilty of the charges contained in Counts A and C of the affidavit but not guilty of the charge contained in Count B. Thereafter, the trial court ordered appellant to pay a $100.00 fine on each count and the costs associated with Count A. Three separate entries memorializing appellant's conviction and sentence were filed on January 20, 2000. It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN ENTERING A JUDGMENT OF GUILTY AGAINST APPELLANT IN CASE No. 99CRB140A OF THE TRIAL COURT.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN ENTERING A JUDGMENT OF GUILTY AGAINST APPELLANT IN CASE NO. 99CRB140C OF THE TRIAL COURT.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED IN REQUIRING EXCESSIVE SECURITY MEASURES IN THE COURTROOM DURING TRIAL OF THE WITHIN CAUSE SO AS TO INTIMIDATE APPELLANT DURING TRIAL OF THIS CASE.
 I, II
Appellant, in his first two assignments of error, argues that the trial court erred in finding him guilty of the charges alleged in Count A (Joshua Sapp) and Count C (Susan Kent) of the affidavit filed with the Mount Vernon Municipal Court on March 2, 1999. Appellant specifically contends that his conviction on both counts was not supported by the sufficiency of the evidence. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra, at paragraph two of the syllabus. When applying the above standard of review to the case sub judice, based on the facts as set forth above, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence. Appellant in the case sub judice was charged with two separate violations of Mount Vernon Municipal Codified Ordinance Section 503.01. Such section provides, in relevant part, as follows: "No person shall stick or post any advertisement, poster, sign or handbill or placard of any description upon any building, vehicle or upon any tree, post, fence, billboard, or any other structure or thing whatever, the private property of another without permission of the occupant or owner of the same, . . ." Whereas Count A alleged that appellant had violated such section on or about February 13, 1999, by placing a flyer on Joshua Sapp's vehicle, Count C alleged that appellant violated the same by placing a flyer on the vehicle owned by Susan Kent on such date. As is stated above, at the trial in this matter, Principal John Kuhn testified that when he spoke with appellant on or about February 12, 1999, about the flyers posted on vehicles in the school parking lot, appellant "responded to me by saying that he had distributed those, written those and would continue to do so as it was his right." Trial Transcript at 60. The flyers, according to Kuhn, contained allegations about appellant's ex-wife. After Kuhn filed a complaint with Patrolman George Hartz on February 12, 1999, Patrolman Hartz spoke to appellant over the telephone and told appellant that he was calling regarding the flyers on vehicles at the high school and the Burger King. Appellant, Hartz testified, "immediately stated, `yes, that was me. I did that.'" Trial Transcript at 39. Appellant also told Hartz that he intended to pass 250 more flyers out on Friday night, which was February 12, 1999, or over the weekend. Hartz testified that appellee's Exhibit 2 "is a Gospel Truth Flyer there on the — same — similar to the ones that were on the cars at the high school and Burger King." Trial Transcript at 38. During his own testimony, appellant testified that he had "probably" made the above statements to Patrolman Hartz and that, on February 13, 1999, he had told the patrolman that he would continue passing out flyers. On February 13, 1999, Officer Beever responded to a complaint from Wal-Mart concerning flyers being placed on vehicles in Wal-Mart's parking lot. Officer Beever, who saw the flyers on the parking lot, identified Exhibit 2 as being "one of the flyers which is similar to the ones that were placed on the vehicles on the evening afternoon of February 13th at the Wal-Mart parking lot." Trial Transcript at 75. During his investigation, Officer Beever spoke with Joshua Sapp and Susan Kent, two of the owners of the vehicles parked in Wal-Mart's lot at the time. Both testified at trial that flyers had been placed on their vehicles without their permission. The two identified appellee's Exhibit 1 as such flyer. As is stated above, appellant and Kelly Strayer also testified at trial on appellant's behalf. Both Strayer and appellant testified that appellant hired Richard Mussaro to pass out flyers. At trial, Strayer identified appellee's Exhibit 2 as the flyer that appellant had created. While appellant admitted hiring Mussaro and others to distribute the flyers, he testified that, as Mussaro's employer, he was not liable for how the flyers were distributed since "how they did it and where they did it was not within my control." Trial Transcript at 111. However, when asked whether he had instructed appellant as to where to distribute the flyers, appellant responded as follows: "No. His best coverage; however he could that, whether at the square or whatever. Large groups of people." Trial Transcript at 112. Based on the foregoing, we find that there was sufficient evidence in the record supporting appellant's two convictions for violating Mount Vernon Codified Ordinance Section 503.01. After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found, beyond a reasonable doubt, that appellant either was the principal offender or that appellant aided and abetted Richard Mussaro, who appellant testified he had hired to distribute the flyers. R.C. 2923.03(A)(2) on complicity provides, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . aid or abet another in committing the offense." The same language is contained in Mount Vernon Codified Ordinance Section 501.10(a)(2). Ohio courts have held that "aid" means to assist whereas "abet" means to incite or encourage. State v. Mootispaw (1996), 110 Ohio App.3d 566, 570. Therefore, in order to show complicity, appellee had to demonstrate that appellant took some affirmative action to assist, encourage, or participate in Mussaro's commission of a crime by some act, deed, word or gesture. Id As is set forth in detail above, both Officer Hartz and Principal Kuhn testified at trial that appellant admitted placing flyers on vehicles at the high school on February 12, 1999. Appellant, Officer Hartz further testified, also admitted placing flyers on vehicles at Burger King on the same day. Appellant also told both the officer and the principal that he intended to continue distributing the flyers. Moreover, when the officer spoke with appellant again on February 13, 1999, appellant told the officer that he was planning to hire people to distribute the flyers on his behalf. Construing the evidence in a light most favorable to the prosecution, we find that based upon the above facts, coupled with appellant's payment to Mussaro to distribute the flyers and his statement to Mussaro to distribute the same to "large groups of people", any rational trier of fact could have found that appellant aided and abetted Mussaro in violating Section 503.01. The circumstantial evidence was more than sufficient for the court to conclude beyond a reasonable doubt that appellant, even if he had hired Mussaro to distribute flyers, had directed, in some degree, the placement of the flyers. Appellant's first and second assignments of error are, therefore, overruled.
 III
Appellant, in his third assignment of error, contends that the trial court erred in requiring excessive security measures in the courtroom during appellant's trial "so as to intimidate Appellant during the trial of this case." At the conclusion of the evidence and just prior to closing arguments, the following colloquy took place:
 Mr. Szerlip: First of all, Your Honor, I'd like to know why I'm surrounded by armed personnel. It's a very uncomfortable, very discerning, very confusing for me to defend myself in this sort of atmosphere. Who are all these people with guns surrounding me and why? Judge Spurgeon: They're, they're court personnel. Please proceed with your argument.
 Mr. Szerlip: The woman over (indicating) there is, is from Common Pleas. She's the bailiff from Common Pleas.
 Judge Spurgeon: Mr. Szerlip, we're here for you to give your final argument in your case. Would you like to do that or not?
 Mr. Szerlip: I, I — well certainly. But I'd like the court to be aware that this is a very hostile environment that is provided here. Thank you.
 Judge Spurgeon: I think this courtroom has been very friendly to you today.
 Mr. Szerlip: Well surrounded by armed guards, possibly, in your opinion, may be comforting to you but not for me and not for some of the people that are here. Thank you.
Trial Transcript at 119.
Pursuant to Court Security Standard 4, "[u]niformed, armed law enforcement officers should be assigned specifically, and in sufficient numbers to court security, to ensure the security of each court and court facility". Not only is there is no evidence in the record as to the number of armed officers present during appellant's trial, but appellant failed to even raise such issue until the conclusion of the evidence. This court, therefore, finds that appellant has not shown he was prejudiced by the presence of the court personnel.
For the foregoing reasons, appellant's third assignment of error is overruled. The judgment of the Mount Vernon Municipal Court is, therefore, affirmed.
Edwards, J. Hoffman P.J. and Milligan, V. J. concur