Appellant Gregory Jackson appeals the trial court's decision convicting him of trafficking in drugs (cocaine), possession of drugs (cocaine), and criminal tools and sentencing him accordingly. Jackson assigns the following four errors for our review:
 I. THE TRIAL COURT COMMITTED ERROR AND VIOLATED THE APPELLANT'S RIGHT TO DUE PROCESS WHEN IT FAILED TO PROVIDE THE JURY WITH A DEFINITION OF ITS INSTRUCTION OF COMPLICITY OR AIDING AND ABETTING.
 II. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO ELICIT IRRELEVANT TESTIMONY OF THE APPELLANT'S PRIOR CONVICTION DURING REDIRECT EXAMINATION OF A STATE'S WITNESS.
 III. IT WAS PROSECUTOROAL MISCONDUCT FOR THE PROSECUTOR TO CALL THE DEFENSE LAWYER A LIAR AND TO REFER TO THE APPELLANT'S PROBATION DURING CLOSING ARGUMENT.
 IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS DEFENSE ATTORNEY FAILED TO OBJECT TO THE TRIAL COURT'S FAILURE TO DEFINE AIDING AND ABETTING.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On May 2, 1997, Detective Allen Henderson of the Narcotics Task Force Southeast Area Law Enforcement (S.E.A.L.E.) arrested Ronald Beasley for selling crack cocaine to him during an undercover operation, which had occurred earlier that day. After the arrest, Beasley agreed to assist the police in setting up a drug purchase from his supper, Jimi Maxey.
While in police custody, at the request of the police officers, Beasley paged Jimi Maxey. Maxey called Beasley to plan the drug deal. Beasley informed the police that he owed $150 to Maxey for unpaid drugs. Beasley indicated the deal could not go through until he paid Maxey the money. During the telephone conversation, the police heard Maxey ask Beasley for the money. The police gave Beasley $150 to pay Maxey. Before the police gave Beasley the money they copied the bills for their records. The police gave him $160 because they did not have the correct change. Beasley called Maxey and agreed to meet him at the Whitehouse Tavern in Garfield Heights. Before Beasley left to meet Maxey, the police placed a surveillance wire on him.
Beasley asked Maxey for $1200 worth of drugs. The police did not want to give Beasley all of the money so they constructed a story. The police instructed Beasley to tell Maxey that a woman wanted to purchase one ounce of crack cocaine and was waiting for them in the bar. Maxey arrived accompanied by appellant Gregory Jackson.
Beasley approached the car and spoke to Maxey and Jackson. The police listened to a conversation through the surveillance wire. Beasley handed Maxey $160 and asked for $10 back. Maxey motioned for Beasley to give the money to Jackson, who took it, and gave Beasley ten dollars in change. The conversation switched to the drug sale. Beasley told Maxey that the buyer, a woman, was in the bar. He informed them that she wanted to see the crack before she gave him the money. Maxey handed the crack to Beasley, who placed it in his pocket. Next, Maxey and Jackson exited the car to go inside the bar with Beasley and complete the transaction. Before the three could enter, the police emerged and arrested Beasley, Maxey, and Jackson.
Det. Robert Soltis, of the Garfield Heights Police Department, testified that he and three other uniformed officers responded to Detectives Henderson and Mendolera's request for back up in a drug arrest. Det. Soltis testified that he and another officer, Dale Merchant, arrested Jackson. According to Det. Soltis' testimony, he displayed his badge and yelled for Jackson to stop and get on the ground. He testified that Jackson pulled something out from his right side and threw it under the car. Det. Soltis testified that he later retrieved a large sum of money, $1,010 from under the car. of that amount, he retrieved the $160 that Beasley gave to Jackson as Maxey instructed.
Det. Henderson testified he secured the scene after the arrest. He stated that he performed a preliminary search of the car for weapons immediately after the arrest. He also testified that he performed a more thorough search at the police garage. Det. Henderson found no weapons. However, he did find crack cocaine underneath the front passenger seat. Henderson further testified that, during the booking process, Jackson initially gave the name Vaughn Jackson and signed papers as such. Jackson later admitted his true identity. During his testimony, Det. Henderson opined that Jackson had given a false identity because he was on probation for a prior offense.
The State indicted Jackson on June 3, 1997 on three counts: drug trafficking, possession of drugs, and possession of criminal tools. The trial began on October 14, 1997. Before closing arguments the Prosecutor, R. Paul Cushion, requested a jury instruction on complicity, specifically aiding and abetting. Jackson's attorney, John Luskin, indicated to the court that the case had not been tried under aiding and abetting. He further argued that, because Jackson had been tried as a principal offender, the aiding and abetting statute did not apply. He contended that adding an instruction on aiding and abetting would be prejudicial to Jackson's rights. After a review of the issues and the relevant case law, the court elected to instruct the jury on complicity. The Court informed counsel that section 523.03 of the Ohio Jury Instructions would be read verbatim. Defense counsel asked the judge if he only intended to read the (A)(2) section of 523.03. This section only defines complicity. The judge indicated that this was correct.
Later, after the jury instructions were read to the jury and before they began deliberating, Mr. Cushion specifically requested a jury instruction on aiding and abetting. His instruction defined complicity as aiding and abetting. It did not describe what constituted aiding and abetting. The judge stated that he had not been able to find an instruction on aiding and abetting in the Ohio Jury Instructions. He indicated he would provide one if it was requested by the jury. Mr. Luskin did not object to the judge's failure to add the instruction. The jury never requested the instruction so it was never given.
During the State's closing argument, the Prosecutor characterized a number of remarks made by defense counsel as lies. Defense counsel timely objected to this characterization and his objections were sustained by the judge. The judge promptly directed the jury to disregard the prosecutor's remarks. After deliberation, the jury returned a verdict of guilty on all charges. This appeal followed.
In his first assignment of error, Jackson argues the trial court violated his right to due process when it failed to define complicity, aiding, or abetting in its charge to the jury. In fact, the trial court did define complicity. The judge gave the jury the following instruction related to complicity:
 The defendant in this case is charged with complicity in the commission of the offenses indicated. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the second day of May, 1997, and in Cuyahoga County, Ohio, the defendant knowingly aided or abetted another in committing the offenses charged in the indictment.
As is evident, the trial court defined complicity as the act of aiding and abetting in the commission of the charged crimes.
At the time the instruction was given to the jury, Jackson's attorney requested a side bar. His request was granted and the following discussion took place:
 Mr. Luskin: Your Honor, for the record, the court has read well and true the instructions to the jury in this matter, and on behalf of my client, Mr. Jackson, we are very well satisfied with the court's excellent recitation of the law in this matter.
The Court: Thank you. Mr. Cushion.
 Mr. Cushion: Your Honor, we have no objection.
 The Court: All right. Just for the record, the court has reviewed the verdict forms in this case and found that proposed page two which requests the jury to make a separate finding as to where the automobile, money and phone were used in the commission of a felony is duplicative and is striking it and will redact the language in Count 3.
 Mr. Cushion: Judge, in the code, is there a specific definition for aiding or abetting?
 The Court: I don't know that there is, if there is in OJI. Are you objecting?
 Mr. Cushion: I think that if there is a definition, we should probably read it judge.
 The Court: Mr. Cushion, I looked at OJI. I don't see the definition. There was no written request for one. If the jury comes back and asks for aiding and abetting, then we can address it at that point, but this is the standard language from OJI that sets forth the aiding and abetting.
Mr. Cushion: Thank you.
The Court: Thank you.
(TR. 425-427.)
Jackson's lawyer did not object to the court's jury instructions. On the contrary, he stated that the purpose of his requested side bar was to place on the record his satisfaction with the sufficiency of the court's jury instructions.
Jackson cites State v. Roundtree(Dec. 3, 1992), Cuyahoga App. No. 61131 for the proposition that the court was required to give the additional instruction on aiding and abetting and failure to do so was an abuse of discretion. This reading of the Roundtree ruling is incorrect. In that case, this court held that it is not an error for the court to include a definition of aiding and abetting in its jury instruction. It did not hold that to exclude the definition is an abuse of discretion.
Further, Jackson's failure to object to the instruction when it was given prevents his assigning it as an error in this court. Rule 30 (A) states that a party on appeal may not "assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict." Id. InState v. Ballew(1996), 76 Ohio St.3d 244, the court found an attorney having failed to object to a jury instruction waive any claim of error on review "unless, but for the error, the outcome of the trial clearly would have been otherwise." Ballew, at 251, [citing State v. Underwood(2983), 3 Ohio St.3d 12, 14, noting accord with State v. Long(1978), 53 Ohio St.2d 91.]
While in the current case, the State did ask the judge to include a jury instruction on aiding and abetting; it was the duty of Jackson's attorney to timely object when it was not given. In Long, the Ohio Supreme Court asserted "[a]ny other rule would relieve counsel from any duty or responsibility to the court and place the entire responsibility upon the trial court to give faultless instructions * * * thereby disregarding entirely the duty to exercise true diligence * * * Long at 96, quoting State v.Driscoll(1922), 106 Ohio St. 33, 39. Long found that failure to timely object brought into operation Crim.R. 52(B). Id. at 94. See also State v. Evans(1992), 63 Ohio St.3d 231, 241.
Crim.R. 52(B) is known as the "plain error rule." In Long, the trial court, in interpreting Crim.R. 52(B) stated "[t]he power afforded to notice plain error is one which courts exercise only in exceptional circumstances, and exercise cautiously even then." Long at 94. Quoting the United States Court of Appeals for the Sixth Circuit in United States v. Rudinsky(C.A.6, 1971),439 F.2d 1074, 1076, Long further explains "[t]he plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice." Long at 94. Generally, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged and where specific intent or culpability is an essential element of the offense, a failure to instruct on that mental element constitutes error." State v. Adams
(1980), 62 Ohio St.2d 151, 153. Adams went on to narrow this rule stating "a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not per se constitute plain error nor does it necessarily require reversal of a conviction." Id. at 154.
The judge, in the case at hand, stated he had looked in the Ohio Jury Instructions for a definition of aiding and abetting and failed to find one. This is perplexing because the Ohio Jury Instructions contain a definition of aiding and abetting, which should have been readily available. In fact, the instruction on complicity defines aiding and abetting. 4 Ohio Jury Instructions (1997), Section 523.03(8) (9). We fail to see how, after a diligent review, this definition went unnoticed.
However, before we can determine whether the judge's omission constituted plain error, we must review the record to determine if not reading the jury instruction substantially prejudiced the outcome in the case. Adams at 154. From this, the question of whether or not a manifest miscarriage of justice occurred can be resolved. Id. In Adams, the court reviewed the charges, the facts of the case, the evidence and the defense presented. Id. at 154 155. In this case, the State charged Jackson with complicity in trafficking drugs. Complicity is the aiding and abetting in the commission of a crime. Aiding means to help, assist, or strengthen. Abetting means to encourage, counsel, incite, or assist. 4 Ohio Jury Instructions (1997), Section 523.03(8) (9).
After considering the evidence, the jury found beyond a reasonable doubt that Jackson had been complicit in the commission of the crime. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass(1967), 10 Ohio St.2d 230, 231. See alsoState v. Nievas(1997), 121 Ohio App.3d 451, 456. A verdict cannot be reversed "where there is substantial and credible evidence upon which the trier of fact could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." Nievasat 451, citing DeHass at 251.
Jackson presented a defense claiming his only purpose in being present in the car with the principal offender, Maxey, was to join him for a drink. He claims to have had no prior knowledge that Maxey planned to sell drugs that evening. While this court ruled in Nievas that "a person's mere association with a principal offender is not enough to sustain a conviction on aiding and abetting," Neivas at 456, citing State v. Sims(1983), 10 Ohio App.3d 56,58, this court found "[c]riminal intent * * * can be inferred from the presence, companionship and conduct of the criminal defendant before and after the offense is committed."Neivas at 456-457, citing State v. Pruett(1971), 28 Ohio App.2d 29,34. We further stated that criminal intent can be proven by either direct or circumstantial evidence. Id. at 456-457, citing State v.Mootispaw(1996), 110 Ohio App.3d 566, 570; State v. Cartellone
(1981), 3 Ohio App.3d 145, 150.
The facts in Nievas are analagous to the facts in the case now before this court; except that the Nievas jury was given an instruction on aiding and abetting. Nievas at 455. In Nievas, the accused drove the principal offender to the site of the drug transaction and was present in the car when the transaction was being discussed and carried out. He was charged with aiding and abetting and was found guilty. Id. Like the accused in Nievas,
Jackson rode as a passenger in the car to the scene of the drug transaction. When the informant gave money to Maxey to pay a prior drug debt, Maxey handed the money to Jackson. Jackson was present in the car while the drug deal was being discussed and when Maxey gave the drugs to Beasley. He was present when Beasley told Maxey the buyer was in the bar and that they would have to go inside to complete the transaction. Jackson exited the car, along with Maxey and the informant, to enter the bar. As they were walking to the bar, the police moved in to arrest the participants. Before being arrested, Jackson threw a bag containing money under a parked car.
Under these facts, had the jury been given an instruction on aiding and abetting, as was the jury in Nievas, it could have reasonably concluded that Jackson's behavior before, after, and during the commission of the crime indicated the criminal intent to aid and abet in its commission, as did the Nievas jury under very similar facts. Therefore, this court cannot conclude that Jackson suffered a manifest injustice by the omission of the jury instruction. While this court finds it difficult to understand why the judge could not find the OJI instruction on aiding and abetting, we conclude his omission was not plain error. Therefore, the first assigned error is overruled.
In his second assignment of error, Jackson argues the trial court erroneously allowed the state to elicit testimony regarding a prior conviction. Jackson contends the testimony was irrelevant and prejudicial and should not have been allowed into evidence.
Only relevant evidence is admissible, except where the probative value of the evidence is substantially outweighed by its prejudicial effect. Evid. R. 403(A). Also, evidence of other crimes, wrongs, or acts is generally inadmissible because of its prejudicial effect. See State v. Sutherland(1994), 92 Ohio App.3d 840,847 and State v. Goney(1993), 87 Ohio App.3d 497, 501. However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, identity, etcetera. Evid. R. 404 (B).
Here, in response to questioning, Det. Henderson stated Jackson originally gave the police a false name, but later admitted his real identity. On cross-examination, defense counsel questioned Det. Henderson extensively about why a person would use a false name. On redirect, the prosecution asked Det. Henderson if he knew why Jackson used the false name. Det. Henderson replied, "He's used it in the past. * * * He was on probation." (Tr. 158.) The defense objected but it was overruled.
The evidence was offered for purposes other than to show that Jackson committed the crime. As the prosecution stated at side bar, it became necessary to counter the inference created by the defense that false names are used for different reasons. Also, since the defense raised the issue on cross-examination, the prosecution was free to make further inquiry. State v. Hartford(1984), 21 Ohio App.3d 29,31 (if the defense had not opened the door to evidence of the defendant's other crimes, the admission of such evidence might have necessitated reversal of the defendant's conviction.) Accordingly, Jackson's second assignment of error is overruled.
In his third assignment of error, Jackson argues misconduct on the part of the prosecutor. Specifically, he asserts the prosecutor inappropriately called defense counsel a liar and referred to his probation during his closing arguments.
"The test for prosecutorial misconduct is whether [the] remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Clemons(1998),82 Ohio St.3d 438, 451, citing, State v. Smith(1984), 14 Ohio St.3d 13,14-15. In State v. Keenan(1993), 66 Ohio St.3d 402, 410, the Ohio Supreme Court developed a list of four factors to consider when determining prosecutorial misconduct. Those factors include:
 1. Whether the misconduct is an isolated incident or a "protracted series of improper arguments."
 2. Whether the defense objected to all or most of the prosecutor's improper remarks.
 3. Whether the court offered a curative instruction.
 4. Whether the evidence of guilt was overwhelming.
Id.
The improper statements Jackson refers to were made during the prosecution's rebuttal closing argument.
 Mr. Cushion: He tries to cover his client, and it outrages me, with the protection of the police department. He tries to utilize that. He tries to snooker you guys into thinking that he can call himself a police officer and wrap that around this defendant.
 But he will do whatever he has to do and he's lied to you. Look at the fingerprint cards. Look at this guy's middle name. It's not Gregory Vaughn Jackson. It is Gregory L. Jackson. Another lie. If the facts were as Mr. Luskin said they were, we wouldn't be here today. This defendant is a criminal. You know that. He was on probation when he was caught.
Mr. Luskin: Objection.
 The Court: Sustained. * * * The jury will disregard the reference to the defendant as a criminal.
(Tr. 399.)
Applying the aforementioned factors to the contested remarks, we conclude there is no basis for prosecutorial misconduct. First, the statements were an isolated incident. Second, defense counsel promptly objected to the statements. Third, the trial court sustained the objection and, at defendant's request, instructed the jury to disregard the statements. Finally, the evidence substantially supported the guilty verdict.
Furthermore, when the prosecution said that the defense attorney lied, it was to bring attention to the fact that defense counsel incorrectly stated that Jackson's name was Gregory Vaughn Jackson. Although the prosecution's statement was not appropriately stated, he simply reminded the jury that "Vaughn" was an alias, not defendant's real name. Also, the prosecution's reference to Jackson's probation was based on evidence properly presented at trial. See Clemons at 452. Based on our review of the record, we overrule Jackson's third assignment of error.
In his fourth assignment of error, Jackson argues he was denied effective assistance of counsel when his attorney did not object to the trial court's failure to define aiding and abetting.
A licensed attorney is presumably competent, thus deference must be given to strategic decisions. State v. Martin(1983),20 Ohio App.3d 172, 174 and Strickland v. Washington(1984),466 U.S. 668, 693. In order to prevail on an ineffective assistance of counsel claim, the defendant must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. Id. at 693. First, Jackson must show that his "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed [him] by the Sixth Amendment. Clemons
at 449. Next, Jackson must show that his counsel's "errors were so serious as to deprive the defendant of a fair trial." Id. at 450.
The record does not reflect that defense counsel's performance was deficient. Jackson urges us to conclude his trial counsel provided ineffective assistance, if we determine that error was waived regarding the court's failure to define aiding and abetting. Although we did conclude error was waived due to trial counsel's failure to object to the court's jury instruction, we cannot comply with Jackson's request.
Defense counsel's failure to object to the jury instruction was not prejudicial. The outcome would not have been different even if defense counsel had objected, as it would not have been different given the facts of the case, even if the jury had received the instruction. See Strickland at 696 (an error by counsel does not warrant reversing the judgment of a criminal proceeding if the error had no effect on the judgment.) The prosecution asked the court to include a definition in its instruction. The court refused. An objection by the defense would not have necessarily prompted the court to include a definition of aiding and abetting. Neither would an objection cause the jury to render a not guilty verdict. For these reasons, Jackson's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J. and TIMOTHY E. McMONAGLE, J., CONCUR.
 ___________________________________ PATRICIA ANN BLACKMON JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).