DECISION AND JUDGMENT ENTRY
Gregory B. McKnight appeals the Vinton County Court of Common Pleas' decision finding him guilty of complicity to commit burglary in violation of R.C. 2923.03(A)(2) and 2911.12(A)(2), and receiving stolen property in violation of R.C. 2913.51(A). McKnight contends that the trial court erred when it denied his motion to dismiss the burglary charge despite the state's failure to prove that anyone was likely to be present in the home that his accomplices burglarized. Because the state produced evidence that McKnight burglarized the victims' residence and evidence the victims were in and out of their home at varying times on the day of the burglary, we disagree. McKnight also asserts that the trial court erred in denying his motion to dismiss because the state failed to produce evidence that he acted with the requisite intent to commit either crime. Because the jury may infer an accused's intent from his actions, and the state produced evidence that McKnight acted in a manner consistent with purposefully aiding and abetting a burglary and knowingly receiving stolen property, we disagree. Finally, McKnight asserts that his trial counsel did not provide him with effective assistance when he failed to raise the affirmative defense of duress. Because much of the evidence, including McKnight's own testimony, contradicts the theory that McKnight was under duress, we find that counsel engaged in sound trial strategy when he declined to advance a duress defense. Accordingly, we overrule each of McKnight's assignments of error and affirm the judgment of the trial court.
 I.
McKnight lived with his wife and child in their Vinton County home approximately one-quarter mile from their closest neighbors, James and Cheryl Clary and their children. The families were friendly with one another, and McKnight had been in the Clarys' home for social occasions. In June 2000, McKnight and his family moved from their Vinton County home to Gambier, Ohio.
During the first week of September 2000, McKnight traveled to New York and met up with two acquaintances, Trevor and Quan, with whom he used to sell drugs during his teen years. McKnight drove Trevor and Quan back to Ohio and allowed them to stay with him at his apartment in Columbus.[2]
On October 11, 2000, McKnight awakened in the Columbus apartment with Trevor and Quan. McKnight drove to his home in Gambier and saw his wife, then returned to the Columbus apartment. According to McKnight, Trevor and Quan wanted to go to McKnight's Vinton County home. McKnight did not inform Trevor and Quan that he had moved to Gambier, and he agreed to take them to Vinton County.
Meanwhile, the Clarys' were at their home in Vinton County. James Clary left home around 10:30 or 11:00 in the morning. Cheryl Clary left home around 12:30 and returned about one-half hour later. She left home again at 2:10 p.m. in order to wash her son's football uniform and get it to him before his 3:30 practice.
McKnight drove Trevor and Quan to Vinton County, but stopped at the Clarys' home instead of going to his former home. Sometime between 2:10 and 4:30 p.m., McKnight knocked on the Clarys' front door. Meanwhile, Trevor and Quan walked around to the back of the house, ripped off the back door, and entered the home. They emerged with weapons belonging to Mr. Clary. McKnight opened the trunk for Trevor and Quan, and they loaded the weapons into the trunk. McKnight then drove Trevor and Quan to Chillicothe, where they stopped at a convenience store.
McKnight left Trevor and Quan at the convenience store while they were inside buying cigarettes. Shortly thereafter, McKnight had an automobile accident. Police discovered that McKnight was driving with an expired driver's license. They impounded the car and found the weapons in the trunk. Meanwhile, Mr. Clary was delayed in getting home because McKnight's automobile accident was blocking the roadway. Mr. Clary arrived home around 4:30 p.m. and discovered the burglary.
McKnight testified before a Vinton County Grand Jury that he had stopped at the Clarys' home that day because he knew Trevor and Quan were dangerous, and he wanted to use the Clarys' telephone to warn his family that they were coming. However, McKnight could not explain away the fact that he knew that his family had moved to Gambier and that his former residence was vacant. McKnight also told the Grand Jury that he believed Trevor and Quan took the weapons while under the mistaken impression that he had stopped at his own home and the weapons belonged to him. He further testified that he was not afraid of Trevor and Quan, but that he didn't want to "stir the situation," so he went along with Trevor and Quan when they took the weapons. At trial, McKnight explained that he agreed to take Trevor and Quan to Columbus, and later to Vinton County, because he was engaged in "personal research," and he felt that the hands-on experience with criminals would help him succeed in his future goal of becoming an investigator or police officer.
The Vinton County Grand Jury indicted McKnight on one count of complicity to commit burglary in violation of R.C. 2923.03(A)(2) and 2911.12(A)(2), and on one count of receiving stolen property in violation of R.C. 2913.51(A). McKnight pled not guilty. A jury found McKnight guilty, and the trial court entered a judgment of conviction and sentence. McKnight appeals, asserting the following assignments of error:
 I. The trial court erred when it denied defendant's Motion to Dismiss pursuant to Criminal Rule 29 on the ground that the state failed to show that persons other than an accomplice of the offender either was or was likely to be present during the commission of the offense.
 II. The trial court erred when it denied defendant's Motion to Dismiss pursuant to Criminal Rule 29 on the ground that the state failed to prove that the defendant acted with the requisite intent to commit either of the crimes with which he was charged.
 III. Ineffective assistance of trial counsel prevented defendant from receiving a fair trial with a reliable result, in violation of his Sixth Amendment right to counsel and analogous provisions of the Ohio Constitution.
 II.
In his first and second assignments of error, McKnight contends that the trial court erred in overruling his Crim.R. 29 motion to dismiss the charges against him based upon the state's failure to produce sufficient evidence against him. When we review the sufficiency of the evidence, we must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307.
 A.
McKnight first asserts that the state failed to present sufficient evidence that the Clarys were likely to be present in their home at the time of the burglary. Specifically, McKnight asserts that the evidence shows that Mrs. Clary regularly left her home and went to pick up her son at school around 3:15 each afternoon.
Pursuant to R.C. 2911.12(A)(2), a person commits second-degree felony burglary when he trespasses, by force, stealth or deception, with the intent to commit a crime in the "permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." In determining what constitutes sufficient proof that a person is likely to be present, the Supreme Court of Ohio has held that the state meets its burden if it presents evidence "that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent." State v. Kilby (1977), 50 Ohio St.2d 21, paragraph one of the syllabus (construing former R.C. 2911.11(A)(3).) The court further held that the "likely to be present" requirement is intended to target "the type and use of the occupied structure and not literally whether individuals will be home from work or play at a particular time."Kilby at 25-26. The court noted that a literal interpretation of the requirement would prevent conviction "if members of a family happened to be at a neighbor's house, social event, church service or whatever * * *. Such interpretation would not only defeat the intent of the General Assembly * * * but would also needlessly hamper future trials with factual issues irrelevant to the question of guilt." Id. at 25-26.
Thus, in applying the "likely to be present" requirement, when the state produces evidence that the victims of a burglary occasionally work at different times or different locations and are not always home at the same time, it has produced sufficient evidence to prove that the victims of a burglary were "likely to be present." State v. Fowler (1983),4 Ohio St.3d 16, 19. The state must show that the victim was or usually is "in and out" of the home at "varying times." State v. Lockhart
(1996), 115 Ohio App.3d 370.
In this case, the evidence showed that James Clary left home at 10:30 or 11:00 and returned at 4:30 or 5:00. Cheryl Clary left home around noon to attend a "community action" and returned around home 12:30 or 1:00. Mrs. Clary then left around 2:10 in order to wash her son's football uniform, which he needed for practice. She stated that school let out at 3:15 everyday, that football practice started right after school, at 3:30. Mrs. Clary further stated that she left home early on that day specifically because she needed to wash the uniform. Mrs. Clary and her son made one stop on the way home from football practice, and arrived home around 7:00 that evening.
We find that Mrs. Clary's testimony constitutes sufficient evidence that she was in and out of her home on the day of the burglary, and that she was merely temporarily absent when the burglary occurred. Contrary to McKnight's assertion that her testimony establishes that she regularly picks her son up from school at 3:15, we find that her testimony more readily could be construed to imply that she generally doesn't pick up her son until after football practice, but that she happened to attend the practice that day after leaving home early to wash the uniform and bring it to her son.
Thus, we find that the state presented evidence based upon which reasonable minds could conclude that the Clarys were likely to be present in their home during the time frame in which the burglary occurred. Accordingly, we overrule McKnight's first assignment of error.
 B.
In his second assignment of error, McKnight contends that the trial court erred in denying his motion to dismiss because the state failed to prove that he acted with the requisite intent to commit either of the crimes with which he was charged.
The complicity statute, R.C. 2923.03, provides, "[n]o person, acting with the kind of culpability for the commission of the offense, shall * * * [a]id or abet another in committing the offense." To prove the principal offense of burglary, the state must prove that the offender acted "with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2). A person acts purposely when it is the person's specific intention to cause a certain result. R.C. 2901.22(A).
The complicity statute does not define "aid and abet." The courts of this state have consistently held that "aid" means assist and "abet" means incite or encourage. "A person's mere association with the principal offender is not enough." State v. Mootispaw (1996),110 Ohio App.3d 566, 570. The state must establish that the accused "took some affirmative action to assist, encourage, or participate in the crime by some act, deed, word, or gesture. Mere presence at the scene or subsequent physical proximity to the stolen item is not sufficient." Id.
The state may rely upon either direct or circumstantial evidence, or both, to prove that an accused aided or abetted a principal offender.Mootispaw at 570, citing State v. Cartellone (1981), 3 Ohio App.3d 145,150. Furthermore, "criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed."Id., quoting State v. Pruett (1971), 28 Ohio App.2d 29, 34.
McKnight contends that this case is analogous to Mootispaw, where we reversed a theft conviction because the state did not produce sufficient evidence to prove that the defendant aided or abetted the principal offender in a theft offense. The defendant in Mootispaw accompanied the offender to a used tire shop in a car belonging to the offender's girlfriend. The car needed a tire. While the defendant searched for a suitable used tire, the offender took a new tire and placed it in the trunk of the car. The defendant found a suitable used tire, which they paid for, and the offender drove away with the defendant in the passenger seat. On appeal, we found that the record did not contain any evidence that the defendant aided or abetted the offender, and in fact no evidence that the defendant even had knowledge of the fact that the offender put a new tire into the trunk. Therefore, we reversed his conviction.
In this case, the record contains ample evidence based upon which reasonable minds could conclude that McKnight aided and abetted the burglary of the Clary residence. McKnight drove his accomplices to the Clary residence; he was not merely a passenger. McKnight did not offer a plausible explanation of his reason for going to the Clarys' home. He had knowledge of the location of the weapons in the residence. He knocked on the front door and stood by it, thereby serving as a lookout, while his accomplices broke into the home. After his accomplices removed the weapons from the home, he opened the trunk to let them put the weapons in, and he drove them away. Thus, we find that the record contains evidence upon which a reasonable person could conclude that McKnight purposefully aided and abetted the burglary of the Clarys' home.
To prove that McKnight violated the statute prohibiting receiving stolen property, R.C. 2913.51, the state had to prove that McKnight received, retained, or disposed of Mr. Clary's weapons "knowing or having reasonable cause to believe that the [weapons were] obtained through commission of a theft offense." R.C. 2913.51(A). Given that McKnight admittedly knew that the weapons belonged to Mr. Clary, watched his accomplices break into the Clary residence and take the weapons, and opened his trunk for the accomplices to put the weapons into his car, we find that the record contains sufficient evidence based upon which reasonable minds could conclude that McKnight knowingly received stolen property.
Accordingly, we overrule McKnight's second assignment of error.
 III.
In his third assignment of error, McKnight contends that he did not receive effective assistance of counsel in the trial court. Specifically, McKnight contends that his trial counsel was ineffective in that he failed to present a duress theory of defense.
In State v. Ballew (1996), 76 Ohio St.3d 244, 255, the Ohio Supreme Court stated the following:
Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Stricklandv. Washington (1984), 466 U.S. 668, 687.
As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983), 461 U.S. 499,508-509.
McKnight testified at trial that Trevor and Quan would have killed him if he did not drive them away from the Clarys' house after they took the weapons and put them in the trunk. However, McKnight also testified that he helped Trevor and Quan in order to receive "hands-on training" and learn about drug trafficking, credit card fraud, computer fraud, welfare fraud, and illegal immigrant activity. In his Grand Jury testimony, when asked directly if he was afraid of Trevor and Quan, McKnight replied that he was not afraid of them. Even in his trial testimony, McKnight stated that he did not believe he was in danger until after Trevor and Quan took the weapons and put them in the trunk.
Given McKnight's conflicting testimony, his trial counsel might well have considered it to be sound trial strategy not to advance a defense of duress. McKnight's counsel's performance fell within the range of reasonable professional assistance.
Accordingly, we overrule McKnight's third assignment of error.
 IV.
In sum, we find that the trial court did not err in overruling McKnight's Crim.R. 29 motion to dismiss the charges against him, because the record contains sufficient evidence that McKnight aided and abetted a burglary and received stolen property. Additionally, we find that McKnight received effective assistance of counsel in the trial court.
Accordingly, we overrule each of McKnight's assignments of error, and we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and Evans, J.: Concur in Judgment and Opinion.
[2] McKnight's boss leased the apartment, but McKnight stayed there and gave Trevor and Quan the impression that the apartment was his.